951 P.2d 487

FOUGHT & COMPANY, INC.,
Plaintiff–Appellee,

v.

STEEL ENGINEERING AND EREC-
TION, INC., an Alaska corporation;
Continental Casualty Corporation, an Il-
linois corporation, Defendants/Cross–
Claimants/Cross–Claim Defendants–Ap-
pellants/Cross–Claim Defendants–Appel-
lees,

and

Kiewit Pacific Co., a Delaware corpora-
tion, Defendant/Cross–Claimant/Cross–
Claim Defendant–Appellant/Cross–
Claim Defendant–Appellee,

and

State of Hawai'i, Defendant/Cross–Claim
Defendant/Cross–Claim Defendant–Ap-
pellant/Cross–Claim Defendant–Appel-
lee,

and

Gary Choy, in his capacity as Contracting
Officer for the State of Hawai'i Depart-
ment of Transportation; John Does 1–
20; Doe Partnerships 1–20; and Doe
Governmental Entities 1–20, Defendants.

No. 19103.

Supreme Court of Hawai'i.

Feb. 11, 1998.

Erik D. Eike, of Damon · Key Bocken Leong Kupchak, on the request, Honolulu, for Fought & Company, Inc.

James H. Lawhn and Keith Y. Yamada, of Oliver, Lau, Ogawa & Nakamura, on the request and in opposition to Fought, Honolulu, for Steel Engineering and Erection, Inc. and Continental Casualty Corporation.

John S. Sasaki, of Watanabe, Ing & Kawashima, on the request and in opposition to Steel, Honolulu, for Kiewit Pacific Co.

Charleen M. Aina and David H. Karlen, Deputy Attorneys General, in opposition, for the Department of Transportation, State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The plaintiff-appellee Fought & Company (Fought) and the defendants/cross-claimants/cross-claim defendants-appellants/cross-claim defendants-appellees Steel Engineering and Erection, Inc., Continental Casualty Corporation (Continental), which is Steel's surety, (collectively Steel) and Kiewit Pacific Company (Kiewit) prevailed in Supreme Court No. 19103,[1] which affirmed (1) the circuit court's order granting (a) Steel's motion for summary judgment against Kiewit

---

1. This appeal consolidates three cases, originally Supreme Court Nos. 19103, 19128, and 19152, under No. 19103. Case Nos. 19128 and 19152, respectively, appeal the judgments in favor of Fought and against Kiewit and Steel.

and the defendant/cross-claim defendant/cross-claim defendant-appellant/cross-claim defendant-appellee Department of Transportation, State of Hawai'i (the DOT) and (b) Kiewit's motion for summary judgment against the DOT, filed on May 8, 1995, (2) the judgment filed on May 30, 1995, (3) the order denying the DOT's motion for reconsideration, filed on June 26, 1995, (4) the order granting and directing entry of final judgment on Fought's motion for summary judgment against Steel, filed on May 4, 1995, and (5) the judgment filed on May 23, 1995. Fought, Steel, and Kiewit seek attorneys' fees and costs pursuant to Hawai'i Revised Statutes (HRS) § 607–14 (Supp.1997)[2] and Hawai'i Rules of Appellate Procedure (HRAP) Rule 39 (1996).[3] Fought asserts an additional ground for recovery against Continental in HRS § 431:10–242 (1993).[4] Steel and Kiewit, respectively, also seek indemnification from Kiewit and the DOT, respectively, for any attorneys' fees and costs for which Steel and Kiewit may be deemed liable.

2. HRS § 607–14 provides in relevant part: .

> **Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit ..., there shall be taxed as attorneys' fees to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.
> ....
> The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains a judgment.

3. HRAP Rule 39 provides in relevant part:

> **COSTS.**
> **(a) To Whom Allowed.** Except in criminal cases or as otherwise provided by law, ... if a judgment is affirmed or a petition denied, costs shall be taxed against the appellant or petitioner unless otherwise ordered....

For the reasons set forth below, we award: (1) attorneys' fees in the amount of $39,-888.93 and costs in the amount of $163.20 in favor of Fought and against Steel; (2) attorneys' fees in the amount of $22,005.58 and costs in the amount of $16,271.76 in favor of Steel and against Kiewit, as well as indemnification in the amount of $40,052.03, representing the costs and fees that Steel is ordered to pay to Fought; and (3) attorneys' fees in the amount of $30,919.89 and costs in the amount of $11,305.34 in favor of Kiewit and against the DOT, as well as indemnification in the amount of $78,329.37, representing the costs and fees that Kiewit has been ordered to pay to Steel.

## I. BACKGROUND

The lawsuit underlying the present requests for attorneys' fees and costs arose out of the construction of a new terminal building, phase I, unit 2, at the Kahului Airport, Kahului, Maui, designated as project No. AM1042–13 (the project). Kiewit was general contractor for the project. Kiewit subcon-

> **(b) Costs For and Against the State of Hawai'i.** In cases involving the State of Hawai'i or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of this rule....
> **(c) Costs Defined.** Costs in the appellate courts are defined as (1) the costs of the original and one copy of the reporter's transcripts if necessary for the determination of the appeal, (2) the premiums paid for supersedeas bonds or other bonds to preserve rights pending appeal, (3) the fee for filing the appeal, and (4) the cost of printing or otherwise producing necessary copies of briefs and appendices.
> **(d) Bill of Costs; Objections.** A party who desires an award of costs shall state them in an itemized and verified bill of costs, together with a statement of authority for each category of item, filed with the clerk with proof of service, no later than 14 days after entry of judgment....

4. HRS § 431:10–242 provides:

> **Policyholder and other suits against insurer.** Where an insurer had contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policy holder, the beneficiary under the policy, or the person who has acquired the rights of the policyholder or beneficiary under the policy shall be awarded reasonable attorney's fees and the costs of suit in addition to the benefits under the policy.

tracted with Steel for the supply and erection of structural steel components for the project. Steel in turn contracted with Fought to supply materials pursuant to Steel's subcontract with Kiewit.

After a dispute arose pertaining to the correct interpretation of provisions in the project specifications, the DOT claimed that Fought, Steel, and Kiewit had all breached their respective contracts by providing and/or utilizing nonconforming steel and, accordingly, withheld $312,000.00 in compensation for the alleged breach from its payments to Kiewit. As a result, Kiewit withheld $312,000.00 under its subcontract with Steel, and Steel withheld the same amount from its payment to Fought.

Fought then filed suit, seeking payment of the $312,000.00 from Steel. Steel cross-claimed against Kiewit, and Kiewit cross-claimed against the DOT. As a result of motions for summary judgment filed by Fought, Steel, and Kiewit, judgments were entered in favor of Fought and against Steel, in favor of Steel and against Kiewit, and in favor of Kiewit and against the DOT. In an order filed on May 8, 1995, the circuit court ruled:

1. Steel Engineering is entitled to judgment against Kiewit for whatever amount Steel Engineering is ultimately held liable to Fought. The Court has already ruled that Steel Engineering is lia-

ble to Fought for $312,000 plus interest at the legal rate of 10% per annum as provided in Section 478-2(4) of the Hawaii Revised Statutes. Accordingly, Steel Engineering is entitled to a judgment against Kiewit for $312,000 plus interest at the legal rate of 10% per annum.

. . . .

2. Kiewit is entitled to judgment against the State for whatever amount Kiewit is ultimately held liable to Steel Engineering. Accordingly, Kiewit is entitled to judgment against the State for $312,000 plus interest at the legal rate of 10% per annum.

On May 30, 1995, judgments in the amount of $312,000.00 plus interest at the rate of ten percent per annum, were entered against Kiewit and the DOT and were certified for appeal pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b).[5] The DOT filed a motion to reconsider in order to raise the jurisdictional issue of sovereign immunity. However, the circuit court denied the motion in an order filed on June 26, 1995. The DOT then filed a notice of appeal from the two orders and the judgment.

On appeal, the DOT argued that: (1) the claims asserted against it by Fought, Steel, and Kiewit were barred by the doctrine of sovereign immunity;[6] (2) if the claims

---

**5.** HRCP Rule 54(b) provides:

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**6.** The DOT's claim of sovereign immunity rested upon HRS § 661-1 (1993), which provides in relevant part:

**Jurisdiction.** The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts shall, subject to appeal as provided by law, have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury.

(1) All claims against the State founded upon any statute of the State; or upon any regulation of an executive department; or upon any contract, expressed or implied, with the State, and all claims which may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer which the officer is not authorized to make or do by the laws of the State, nor

against the DOT were not barred by sovereign immunity, then summary judgment had been erroneously granted because there remained genuine issues of material fact regarding the provisions of the contracts at issue; or (3) if the claims against the DOT were not barred by sovereign immunity and the contract terms were subject to only one reasonable interpretation, then HRS § 661–8 (1993) [7] prohibited an award of prejudgment interest against the DOT. Kiewit and Steel argued on cross-appeal that, if the DOT had no liability on the contracts, then there was no independent basis for imposing liability on Kiewit and Steel in favor of Fought. Finding no merit in the DOT's argument, this court affirmed all of the orders and judgments of the circuit court in a summary disposition order, which was filed on July 28, 1997. Having been mooted, Kiewit's and Steel's cross-appeals were not addressed.

On September 12, 1997, Fought, Steel, and Kiewit each filed requests for costs and attorneys' fees pursuant to HRAP Rule 39, see supra note 3, and HRS § 607–14, see supra note 2. Fought requests attorneys' fees in the amount of $44,235.83 and $163.20 in photocopying costs. Steel requests attorneys' fees in the amount of $22,005.58 and costs totaling $16,271.76.[8] Kiewit requests attorneys' fees in the amount of $30,919.89 and costs totaling $11,305.34.[9]

In opposition to Fought's request for fees, Steel argues that: (1) fees for the services of Fought's retained general counsel, who are licensed to practice law in Oregon where Fought is headquartered and assisted Fought's attorneys in Hawai'i in the preparation of the appeal, are not recoverable pursuant to the provisions of HRS § 607–14; (2) the services of Fought's general counsel were not necessary to the litigation; and (3) if Steel is liable to Fought for attorneys' fees and costs, the amount of Steel's liability must be incorporated into Steel's entitlement to its own attorneys' fees and costs and taxed against Kiewit. The DOT further argues, in opposition to Fought's request for attorneys' fees, that the fees sought to be recovered for the services of Fought's Hawai'i counsel are not reasonable.

Kiewit, in turn, conditionally opposes Steel's requests for attorneys' fees and costs, arguing that if Steel is permitted to recover the premiums paid on its supersedeas bond, which was posted to forestall execution of judgment by Fought until the resolution of the appeal, and if Steel is further permitted to recover costs of attorneys' fees in its mooted cross-appeal against Fought, then Kiewit likewise is entitled to recover its premium costs for the supersedeas bond posted to forestall execution of judgment by Steel and its attorneys' fees incurred in the prosecution of its mooted cross-appeal against Steel.

The DOT argues, in opposition to Steel's requests for attorneys' fees and costs, that: (1) the costs of Steel's supersedeas bond and of its filing fee are not taxable pursuant to the provisions of HRAP Rule 39 because they were unnecessary to preserve Steel's rights against Kiewit, over whom Steel prevailed on appeal; (2) Steel's claim for indemnification from Kiewit in the amount of any attorneys' fees and costs for which Steel may be found liable to Fought is a request for post-judgment damages, which the DOT contends that this court lacks jurisdiction to consider; and (3) Steel and Kiewit are entitled only to costs and attorneys' fees for the portion of their appeals on which they pre-

---

upon any other cause of action than as herein set forth.

7. HRS § 661–8 provides that "[n]o interest shall be allowed on any claim [against the state] up to the time of the rendition of judgment thereon by the court, unless upon a contract expressly stipulating for the payment of interest, or upon a refund of a payment into the 'litigated claim fund' as provided by law."

8. Steel's costs include: $85.16 for transcripts and the videotape of the hearing on the motions for summary judgment (HRAP Rule 39(c)(1)); supersedeas bond premiums of $15,750.00 (HRAP Rule 39(c)(2)); filing fees of $130.00 (HRAP Rule 39(c)(3)); and copying costs of $306.60 (HRAP Rule 39(c)(4)).

9. Kiewit's costs include: $232.54 for transcripts (HRAP Rule 39(c)(1)); supersedeas bond premiums of $10,610.00 (HRAP Rule 39(c)(2)); filing fees of $130.00 (HRAP Rule 39(c)(3)); and photocopying costs of $332.80 (HRAP Rule 39(c)(4)). In its bill of costs, Kiewit incorrectly asserts a total of $11,508.14. Accurate addition reveals the total to be $11,305.34.

vailed, and, because the billing statements submitted by Steel and Kiewit do not allocate fees and costs to the portions of the appeals to which they are attributable, they are excessive.[10]

Finally, the DOT opposes Kiewit's requests for fees and costs, arguing that: (1) the doctrine of sovereign immunity precludes any award of fees against the DOT pursuant to HRS § 607–14 where HRS § 661–1 (1993), *see supra* note 6, is asserted as the basis for jurisdiction; (2) the costs of Kiewit's mooted cross-appeal against Steel and the costs and fees for which Kiewit may be required to indemnify Steel are elements of post-judgment damages, which are not attributable to the conduct of the DOT and which this court lacks jurisdiction to consider; (3) Kiewit's fee request is unreasonably high; (4) the premiums paid for a supersedeas bond and filing fees were not directly attributable to Kiewit's appeal against the DOT and therefore are not taxable pursuant to HRAP Rule 39; (5) Kiewit has identified only $145.60 in photocopying costs directly attributable to its appeal against the DOT, and the remaining copying costs are not taxable pursuant to HRAP Rule 39; and (6) an indemnification theory cannot legitimize the taxation against the DOT of costs incurred in appeals in which the DOT was not a direct participant.[11]

## II. *DISCUSSION*

The extensive list of objections described above generates four threshold questions that must be answered before we can resolve the requests for attorneys' fees and costs that Fought, Steel, and Kiewit have submitted: (1) whether, pursuant to the provisions of HRS § 607–14, a prevailing party may recover the fees of attorneys who, although licensed in another jurisdiction, assist local attorneys in conducting litigation in the courts of Hawai'i; (2) whether, when awarding attorneys' fees and costs incurred on appeal, this court has jurisdiction to order a third party to indemnify the party against whom the award of attorneys' fees and costs has been allowed where the judgment appealed from does not expressly provide for indemnification; (3) whether a litigant, who is involved in a breach of contract action only by virtue of its intermediary status in the chain of payment flowing from the breaching payor to the complaining "ultimate" payee, may recover its attorneys' fees and costs in cross-appeals filed solely to protect it from liability for the judgment rendered against the breaching payor in the event that the breaching payor should prevail on appeal; and (4) whether the doctrine of sovereign immunity precludes an award of attorneys' fees, pursuant to HRS § 607–14, in a lawsuit involving a state agency, as to which jurisdiction is conferred by the provisions of HRS § 661–1. We address these questions seriatim.

A. *Fees Of Attorneys Who Are Licensed And Perform Services In Other Jurisdictions And Who Assist Attorneys Licensed In Hawai'i In The Prosecution Of Litigation In The Courts Of Hawai'i Are Recoverable Pursuant To The Provisions Of HRS § 607–14.*

Both Steel and the DOT argue that Fought's request for taxation of the fees of Kobin and Kobin (Kobin), its retained general counsel, must be denied, inasmuch as no member of that firm is licensed to practice law in this jurisdiction, and such an award would therefore violate the public policy embodied in HRS §§ 605–14 (1993)[12] and 605–

---

10. The DOT initially objected to Steel's request for costs of copies of the transcripts of the arguments made on the motions for summary judgment on the grounds that the transcripts were not necessary to the determination of the appeal. However, this objection was withdrawn upon realization that the DOT itself had designated these transcripts as part of the record on appeal.

11. The DOT also initially opposed Kiewit's request for transcripts, but later withdrew this objection.

12. HRS § 605–14 provides in relevant part:

**Unauthorized practice of law prohibited.** It shall be unlawful for any person, firm, association, or corporation to engage in or attempt to engage in or to offer to engage in the practice of law, or to do or attempt to do or offer to do any act constituting the practice of law, except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or of the United States. . . .

17 (1993),[13] which respectively prohibit and criminalize the practice of law without a license, except in instances in which an attorney licensed to practice in some other jurisdiction has been admitted *pro hac vice* for the purpose of participating in a specific case. It is uncontested that Kobin did not appear in any Hawai'i court on Fought's behalf. However, it is not apparent that "the practice of law," as contemplated by HRS §§ 605–14 and 605–17, is limited to court appearances. Accordingly, in order to determine the merits of this argument, we must first determine whether the attorneys' fees sought for Fought's general counsel were incurred for the performance of services that comprise "the practice of law," as that phrase is contemplated in the relevant statutes.

In interpreting a statute,

"our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.' HRS § 1–15(1) (1993). Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool."

*State v. Cullen*, 86 Hawai'i 1, 9, 946 P.2d 955, 963 (1997) (quoting *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997)). HRS § 605–14 provides in relevant part that it is

unlawful for any person, firm, association, or corporation to engage in ... the prac-

tice of law, ... except and to the extent that the person, firm, or association is licensed or authorized so to do by an appropriate court, agency, or office or by a statute of the State or the United States[.]

However, because the "practice of law" is nowhere defined in HRS ch. 605, the statute presents an ambiguity that must be resolved by resort to legislative history.

First enacted in 1955, HRS §§ 605–14 and 605–17 were intended to protect the public "against incompetence or improper activity." *See* Sen. Stand. Comm. Rep. No. 700, in 1955 Senate Journal, at 661; Hse. Stand. Comm. Rep. No. 612, in 1955 House Journal, at 782. In drafting the statutes, the legislature expressly declined to adopt a formal definition of the term "practice of law," noting that "[a]ttempts to define the practice of law in terms of enumerating the specific types of services that come within the phrase are fruitless because new developments in society, whether legislative, social, or scientific in nature, continually create new concepts and new legal problems." Sen. Stand. Comm. Rep. No. 700, in 1955 Senate Journal, at 661; Hse. Stand. Comm. Rep. No. 612, in 1955 House Journal at 783. The legislature recognized that

the practice of law is not limited to appearing before the courts. It consists, among other things of the giving of advice, the preparation of any document or the rendition of any service to a third party *affecting the legal rights ... of such party*, where such advice, drafting or rendition of service requires the use of any degree of legal knowledge, skill or advocacy.

Sen. Stand. Comm. Rep. No. 700, in 1955 Senate Journal. at 661 (emphasis added); *see also* Hse. Stand. Comm. Rep. No. 612, in 1955 House Journal, at 783.

Similarly, while it has explored the concept's dimensions, this court has never formally defined the term "practice of law." In *In re Ellis*, 55 Haw. 458, 459–60, 522 P.2d 460, 461–62 (1974), for example, an unlicensed individual, who had "filed ... numerous papers, signed by him, including but not

---

**13.** HRS § 605–17 provides that "[a]ny person violating section[] 605–14 ... shall be guilty of a violation, but, upon subsequent violation of the section[], the person shall be guilty of a misdemeanor."

limited to, various petitions, requests for service, complaints, claims, joinder in pleadings and cross-claim, appearances, objections to motions, suggestions of recusal, motions to disqualify opposing counsel, other and novel forms of legal pleading—together with legal memoranda and appendices thereto," was found to have engaged in the unauthorized practice of law. In *State v. Gilbert*, 68 Haw. 226, 708 P.2d 138 (1985), a person who wrote to a licensed attorney, claiming to represent a client, and signed the letter as "attorney for" the client was determined to have engaged in the practice of law. More recently, in *Office of Disciplinary Counsel v. Lau*, 85 Hawai'i 212, 941 P.2d 295 (1997), this court held that agreeing to represent a client and accepting retainer fees, appearing before the Hawai'i Paroling Authority on behalf of a client, preparing and signing, as a client's attorney, a motion to continue a case, and making an appearance in court as counsel for a client were aspects of "the practice of law." *Id.* at 212–13, 215, 941 P.2d at 295–96, 298.

Our holdings in *Lau* and the other cases cited above are not incompatible with the proposition that the "practice of law" entails far more than merely appearing in court proceedings. Moreover, other jurisdictions, in seeking to define the "practice of law," have reached a similar conclusion. The California Supreme Court, for example, has expressed the position that, for the purposes of that state's statute restricting the practice of law to "active member[s] of the State Bar," such practice includes " 'the doing and performing [of] services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure,' [the rendering of] legal advice[,] and legal instrument and contract preparation[.]" *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court of Santa Clara County*, 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 308, 949 P.2d 1, 5 (1998) (quoting *People ex rel. Lawyers' Institute of San Diego v. Merchants Protective Corp.*, 189 Cal. 531, 209 P. 363 (1922)).

■ In the present matter, Kobin was engaged in such activity as consultation with Fought and Fought's Hawai'i counsel regarding the appeal, preparation of Fought's state-ment of position in anticipation of mediation, assisting Fought's Hawai'i counsel with legal research, analysis of briefs and papers submitted by other parties to the litigation, resolution of issues pertaining to the posting of Steel's supersedeas bond, planning Fought's strategy for the appeal, and reviewing and critiquing the briefs and other papers prepared by Fought's Hawai'i counsel. It is apparent that Kobin was "practicing law" when it engaged in these activities.

■ However, this determination does not end our inquiry. HRS § 1–4 (1993) provides in relevant part that "[t]he laws [of Hawai'i] are obligatory upon all persons ... within the jurisdiction of the State." Hence, the restrictions of HRS §§ 605–14 and 605–17 are applicable to legal services rendered Kobin only if those services were rendered "within the jurisdiction." The question as to what constitutes the practice of law "within the jurisdiction" is one of first impression, the resolution of which must adequately address

the tension that exists between interjurisdictional practice and the need to have a state-regulated bar. As stated in the American Bar Association Model Code of Professional Responsibility, Ethical Consideration EC 3–9, "Regulation of the practice of law is accomplished principally by the respective states. Authority to engage in the practice of law conferred in any jurisdiction is not a per se grant of the right to practice elsewhere, and it is improper for a lawyer to engage in practice where he is not permitted by law or by court order to do so. However, the demands of business and mobility of our society pose distinct problems in the regulation of the practice of law by the states. In furtherance of the public interest, the legal profession should discourage regulation that unreasonably imposes territorial limitations upon the right of a lawyer to handle the legal affairs of his client or upon the opportunity of a client to obtain the services of a lawyer of his choice in all matters including the presentation of a contested matter in a tribunal before which the lawyer is not permanently admitted to practice."

*Birbrower*, 70 Cal.Rptr.2d at 309, 949 P.2d at 6.

The foregoing considerations are germane to ascertaining the scope of HRS §§ 605–14 and 605–17, particularly in light of the legislature's expressed disinclination to define the "practice of law" in the face of "new developments in society, whether legislative, social, or scientific in nature, [which] continually create new concepts and new legal problems." While the scope of these statutes must be expansive enough to afford the public needed protection from incompetent legal advice and counsel, the transformation of our economy from a local to a global one has generated compelling policy reasons for refraining from adopting an application so broad that a law firm, which is located outside the state of Hawai'i, may automatically be deemed to have practiced law "within the jurisdiction" merely by advising a client regarding the effect of Hawai'i law or by "virtually entering" the jurisdiction on behalf of a client via "telephone, fax, computer, or other modern technological means." *See Birbrower*, 70 Cal.Rptr.2d at 309, 949 P.2d at 6. A case such as this—involving parties domiciled in at least five different jurisdictions—only emphasizes what seems intuitively obvious: a commercial entity that serves interstate and/or international markets is likely to receive more effective and efficient representation when its general counsel, who is based close to its home office or headquarters and is familiar with the details of its operations, supervises the work of local counsel in each of the various jurisdictions in which it does business. Undoubtedly, many Hawai'i corporations follow the same practice.

A blanket rule prohibiting the taxing of fees for the services of extrajurisdictional legal counsel who assist local counsel in the conduct of litigation among parties, who are themselves domiciled in different jurisdictions, would be an imprudent rule at best. At a minimum, the result would be to increase the total cost of legal representation and to magnify the difficulty of controlling multijurisdictional litigation. Moreover, such a rule might also create an incentive for ethical violations, inasmuch as Hawai'i Rules of Professional Conduct (HRPC) Rule 1.1 mandates that "[a] lawyer shall provide competent representation to a client." In many instances involving complex litigation among parties domiciled in different jurisdictions, competent representation undoubtedly *requires* consultation with legal counsel licensed to practice in another jurisdiction. To prohibit an award of fees for these services would only undermine the policies underlying HRS §§ 605–14 and 605–17, which were enacted to protect the public against incompetence.

In *Birbrower*, the California Supreme Court recently addressed these issues in deciding whether a fee agreement between a California client and its New York law firm was rendered unenforceable by the provisions of a California statute prohibiting the practice of law by persons who are not active members of the California bar. The *Birbrower* court reasoned that the prohibition, set forth in California Business and Professions Code § 6125, against the practice of law by unlicensed persons precluded recovery under the fee agreement for any services that the New York-licensed attorneys performed *in California*. *Birbrower*, 70 Cal. Rptr.2d at 309, 949 P.2d at 5. However, reasoning that the statute did not regulate the practice of law in other states, the *Birbrower* court concluded that it did not bar recovery of compensation for services that the attorneys had performed *in New York*. *Id.* In fashioning a test for what constituted the practice of law "in California," the *Birbrower* court reasoned that

> the practice of law "in California" entails sufficient contact with the California client to render the nature of the legal service a clear legal representation. In addition to a quantitative analysis, we must consider the nature of the unlicensed lawyer's activities in the state. Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law "in California." The primary inquiry is whether the unlicensed lawyer engaged in sufficient activities in the state, or created a continuing relationship with the California client that included legal duties and obligations.

*Id.*, 70 Cal.Rptr.2d at 308, 949 P.2d at 5.

Considering Kobin's activities in light of the factors suggested by *Birbrower*, we hold that it did not practice law "within the jurisdiction," that is, "in Hawai'i," and, therefore, that it was not subject to the restrictions

imposed by HRS §§ 605–14 and 605–17. Fought and Kobin are both located in Oregon. Hence, Kobin did not represent a "Hawai'i client." Furthermore, all of the services rendered by Kobin were performed in Oregon, where the firm's attorneys are licensed. Kobin did not draft or sign any of the papers filed during the appeal, did not appear in court, and did not communicate with counsel for other parties on Fought's behalf. Finally, Kobin's role was strictly one of consultant to Fought and Fought's Hawai'i counsel. We are convinced that Fought's Hawai'i counsel were at all times "in charge" of Fought's representation within the jurisdiction so as to insure that Hawai'i law was correctly interpreted and applied. While Kobin undoubtedly contributed to the successful completion of the litigation in this case by its collaborative effort with Fought's Hawai'i counsel, we cannot say, on the record before us, that Kobin rendered any legal services "within the jurisdiction." Because Kobin's law practice in Oregon is not regulated by Hawai'i law, it is apparent that Kobin did not violate HRS §§ 605–14 and 605–17 or the public policy embodied by those statutes in rendering legal services to Fought. Accordingly, the statutes do not bar Fought's recovery of fees for services rendered by Kobin in the present matter.

B. *Although The Summary Judgment Entered In Favor Of Steel And Kiewit And Against Kiewit And The DOT, Respectively, Does Not, On Its Face, Order Indemnification Of Steel Or Kiewit For Attorneys' Fees and Costs Taxed Against Them, The Uyemura Rule Permits Recovery Of Expenses Incurred By Parties Drawn Into Litigation With Third–Parties By The Wrongful Act of Another.*

Steel and Kiewit contend that, to the extent that they are liable for the attorneys' fees reasonably incurred by the party prevailing against them in this appeal, these sums should be incorporated into the judgments entered in their favor, which, *inter alia,* entitle them to an award of attorneys' fees against the party over whom they prevailed. They urge two grounds in support of this result. First, they argue that the circuit court's order filed on May 8, 1995 authorizes these amounts by way of indemnification,

inasmuch as it provides that Steel and Kiewit are "entitled to judgment against [the party over whom they prevailed] for whatever amount [they were] ultimately held liable to [the party who prevailed against them]." Steel and Kiewit reason that, because the DOT filed a notice of appeal from that order, this court's summary disposition order affirming "the judgment(s) or order(s) from which the appeal is taken" renders the circuit court's order "the law of the case," and, therefore, that this court may incorporate its terms into any awards of attorneys' fees incurred on appeal that we are authorized to allow pursuant to HRS § 607–14. Second, Steel and Kiewit assert that the rule established by this court in *Uyemura v. Wick,* 57 Haw. 102, 551 P.2d 171 (1976), namely, that a party involved in or threatened with litigation due to the wrongful act of another may recover necessary expenses incurred to protect his interests, entitles them to such a recovery. In other words, inasmuch as their involvement in the present litigation was precipitated by the DOT's breach of contract, Steel and Kiewit contend that the *Uyemura* rule entitles them to be indemnified for expenses incurred in defending their interests.

The DOT counters that the circuit court's May 8, 1995 order cannot provide a legal basis for ordering indemnification because, inasmuch as only the judgment in the amount of $312,000.00, plus interest, was certified for appeal pursuant to HRCP 54(b), the other provisions of the order are not properly before this court on appeal. The DOT also contends that, if Steel and Kiewit are entitled to recover such expenses pursuant to the *Uyemura* rule, this court may not incorporate that recovery into any taxation of attorneys' fees pursuant to HRS § 607–14 because such an award must be supported by factual determinations that this court is not competent to make.

1. *The circuit court's May 8, 1995 order does not provide a legitimate basis for this court to incorporate awards of attorneys' fees taxed against Steel and Kiewit pursuant to HRS § 607–14 into any awards entered in Steel's and Kiewit's favor and against the parties over whom they prevailed on appeal.*

"The doctrine of the law of the case states that a determination of a ques-

tion of law made by an appellate court in the course of an action becomes the law of the case and may not be disputed by a reopening of the question at a later stage of the litigation. This doctrine applies to issues that have been decided either expressly or by necessary implication."

*Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 352 n. 8, 944 P.2d 1279, 1295 n. 8 (1997) (quoting *Weinberg v. Mauch*, 78 Hawai'i 40, 47, 890 P.2d 277, 284 (1995) (citations and internal quotation marks omitted)). Thus, it is apparent that, in order for the circuit court's May 8, 1995 order to establish "the law of the case" and thereby constitute the predicate for the issuance of an order from this court allowing Steel and Kiewit to be indemnified by the parties against whom they have prevailed on appeal for the attorneys' fees that they themselves have been taxed, it would be necessary for that order, as affirmed by our order of summary disposition filed on July 28, 1997, to have resolved with finality the issue of indemnification. However, it did not.

As a general matter, an appellate court's jurisdiction is limited to a review of final judgments, orders and decrees. A judgment is final when all claims of the parties to the case have been terminated. Absent the entry of final judgment as to all claims, an appeal may generally be taken from a nonfinal order or decree if (1) leave to take an interlocutory appeal has been granted by the circuit court pursuant to HRS § 641–1(b); (2) the order or decree has been certified as final for appeal purposes pursuant to [HRCP] Rule 54(b); (3) the order or decree being appealed is an "appealable order" under the collateral order doctrine; (4) the order or decree being appealed is an "appealable order" under the *Forgay* doctrine; or (5) the order or decree is immediately appealable pursuant to statutory provision.

*Wong v. Takeuchi*, 83 Hawai'i 94, 98–99, 924 P.2d 588, 592–93 (App.1996) (citations and footnotes omitted). Because the circuit court's order of May 8, 1995 was neither a final order nor an appealable nonfinal order falling within one of the recognized exceptions to the final order requirement, this court lacked jurisdiction to review it and the order was not affirmed by our summary disposition order.

On June 29, 1995, the DOT filed its Notice of Appeal, which stated:

Notice is hereby given that Defendant State of Hawaii (State) . . . appeals to the Supreme Court and Intermediate Court of Appeals of the State of Hawaii from the[:]

(1) Order Granting (1) Defendant Steel Engineering & Erection, Inc.'s ("Steel") Motion for Summary Judgment Against Kiewit Pacific Co. ("Pacific") and State (2) Defendant Kiewit Pacific Co.'s ("Kiewit") Motion for Summary Judgment Against Defendant State entered on May 8, 1995 and attached hereto as Exhibit "A";

(2) Judgment certified as final pursuant to Haw. R. Civ. Proc. Rule 54(b), entered on May 30, 1995 and attached hereto as Exhibit "B"[;]

(3) Order Denying State's Motion for Reconsideration filed and entered on June 26, 1995, attached hereto as Exhibit "C[.]"

However, the May 8, 1995 order designated in the DOT's notice of appeal provided in relevant part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Defendant Steel Engineering & Erection, Inc.'s Motion for Summary Judgment against Defendant Kiewit Pacific Co. and the State of Hawaii and Defendant Kiewit Pacific Co.'s Motion for Summary Judgment Against Defendant State of Hawaii and GRANTED as follows:

1. Steel Engineering is entitled to judgment against Kiewit for whatever amount Steel Engineering is ultimately held liable to Fought. The Court has already ruled that Steel Engineering is liable to Fought for $312,000 plus interest at the legal rate of 10% per annum as provided in Section 478–2(4) of the Hawaii Revised Statutes. Accordingly, Steel Engineering is entitled to judgment against Kiewit for $312,000 plus interest at the legal rate of 10% per annum.

No genuine issue of material fact remains with regard to this $312,000 plus

interest, and Steel Engineering is entitled to judgment as a matter of law.

Furthermore, *pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure, this Court finds that there is no just reason for delay and directs entry of final judgment in favor of Steel Engineering for the amount of $312,000 plus interest, and its costs in this action.*

2. Kiewit is entitled to judgment against the State for whatever amount Kiewit is ultimately held liable to Steel Engineering. Accordingly, Kiewit is entitled to judgment against the State for $312,000 plus interest at the legal rate of 10% per annum.

No genuine issue of material fact remains with regard to this $312,000 plus interest, and Kiewit is entitled to judgment as a matter of law.

Furthermore, *pursuant to Rule 54(b) of the Hawaii Rules of Civil Procedure, the Court finds that there is no just reason for delay and directs entry of final judgment in favor of Kiewit for the amount of $312,000 plus, interest, and its costs in this action.*

3. *The Court retains jurisdiction as to other matters not herein determined, including without limitation, any rights that any of the parties may have to recover attorneys' fees.*

(Emphases added.)

Moreover, the Judgment entered on May 30, 1995 provided only that:

Pursuant to Defendant Kiewit Pacific Co.[ ]'s Order Granting: (1) Defendant Steel Engineering & Erection, Inc.'s Motion for Summary Judgment Against Defendant Kiewit Pacific Co., and the State of Hawaii and (2) Defendant Kiewit Pacific Co.'s Motion for Summary Judgment Against Defendant State of Hawaii Filed May 8, 1995,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that *Judgment is hereby entered in favor of Defendant STEEL ENGINEERING & ERECTION, INC. and against Defendant KIEWIT PACIFIC CO., in the principal amount of $312,000, together with interest at the legal rate of ten percent (10%) per annum* as specified by Haw.Rev.Stat. § 478–2(4) (Supp.1992), from September 4, 1992 until paid. As of May 1, 1995, such interest amounts to $82,830.12 and continues to accrue thereafter at a per diem rate o[f] $85.48 until paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that *Judgment is hereby entered in favor of Defendant KIEWIT PACIFIC CO. and against the STATE OF HAWAII, in the principal amount of $312,000.00, together with interest at the legal rate of ten percent (10%) per annum* as specified by Haw.Rev.Stat. § 478–2(4) (Supp.1992), from September 4, 1992 until paid. As of May 1, 1995, such interest amounts to $82,830.12 and continues to accrue thereafter at a per diem rate o[f] $85.48 until paid.

There being no just reason for delay, *this* judgment is certified as final pursuant to Haw. R. Civ. P. 54(b). *The Court retains jurisdiction over all other claims in this action, including without limitation, awards of attorneys' fees and costs.*

(Emphases added.)

The wording of both the order and the judgment make clear that only the judgment in the amount of $312,000.00 plus interest was certified to this court pursuant to HRCP 54(b). The certified judgment does not address or dispose of any additional issues relating to liability. The portion of the order that was *not* certified pursuant to HRCP 54(b)—and was not, therefore, appealable— could not have been affirmed by this court and, accordingly, could not establish "the law of the case." That being so, it provides no basis for ordering indemnification with respect to the taxation of attorneys' fees incurred on appeal pursuant to HRS § 607–14.

2. *The Uyemura rule may be applied by appellate courts in order to permit recovery of a third-parties' attorneys' fees and costs that have been taxed against parties involved in litigation because of the wrongful act of another.*

Normally, pursuant to the "American Rule," each party is responsible

for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent.... [T]his court has applied the exception where the wrongful act of the defendant causes the plaintiff to litigate with a third party. In *Uyemura v. Wick*, 57 Haw. 102, 551 P.2d 171 (1976), we held that,

> where the wrongful act of the defendant ... has involved the plaintiff in litigation with [another ... ], or placed [the plaintiff] in such relations with others as makes it necessary to incur expenses to protect his [or her] interest, such expenses, *including attorneys' fees* should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.

*Id.* at 108–09, 551 P.2d at 176 (emphasis added).

> *Thus, where the wrongful act of a defendant causes a plaintiff to engage in litigation with a third party in order to protect his or her rights or interests, attorney's fees incurred in litigating with that third party may be chargeable against the wrongdoer as an element of the plaintiff's damages.*

> In order to recover attorneys' fees under this principle, the plaintiff must establish: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of the defendant's tortious conduct, that is, that the party sought to be charged with the fees was guilty of a wrongful or negligent act or breach of agreement; (2) that the litigation was with a third party, not with the defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, they are the natural and necessary consequence of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery[.]

*Uyemura*, 57 Haw. at 109, 551 P.2d at 176 (citations omitted).

*Lee v. Aiu*, 85 Hawai'i 19, 32–33, 936 P.2d 655, 668–69 (1997) (some brackets added and some in original) (some citations omitted) (ellipsis points and some emphasis added). The DOT argues that this rule may not be applied at the appellate level where a party, who has been exposed to litigation with a third party because of another's wrongful act, eventually becomes the subject of an award of attorneys' fees in favor of the third party, because, under these circumstances, taxation of these attorneys' fees against the party whose wrongful act gave rise to the litigation would constitute an award of damages and involve factual determinations, which the DOT asserts that an appellate court lacks jurisdiction to make. The DOT also contends that, in order for the *Uyemura* rule to apply, the wrongful action of the party to be charged with litigation costs must have been the *sole* cause of the dispute between the plaintiff and the third party, which the DOT argues is not true on the facts of this case.

While this court has never expressly addressed the question, the courts of other jurisdictions have recognized that an award of costs and fees to a prevailing party is inherently in the nature of a damage award. *See Donovan v. Delaware Water and Air Resources Comm'n*, 358 A.2d 717, 723 (Del. 1976) (quoting *Peyton v. William C. Peyton Corp.*, 8 A.2d 89, 91 (Del.1939)) (" 'Costs are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party for expenses necessarily incurred in the assertion of his rights in court.' "); *Department of Transp. v. Fru–Con Constr.*, 206 Ga.App. 821, 426 S.E.2d 905, 909 (1992) (quoting *Brown v. Baker*, 197 Ga.App. 466, 398 S.E.2d 797 (1990)) (" 'Th[e attorneys' fee] statute merely establishes the circumstances in which a plaintiff may recover the expenses of litigation as an additional element of damages.' "); *In re Gas Water Heater Prods. Litigation*, 697 So.2d 341, 345 (La.Ct.App.1997) (citing *Woodmen of the World Life Ins. Soc'y v. Hymel*, 610 So.2d

195 (La.Ct.App.1992)) ("Under Louisiana law, attorneys' fees are not recoverable as an element of damages unless they are provided for by statute or contract.").

 Moreover, this court has implicitly recognized that an award of attorneys' fees might require resolution of factual questions when it refused to rule on a request for fees incurred *at trial* because the request raised "evidentiary-type issues" best left to the trial court. *S. Utsunomiya Enters. v. Moomuku Country Club*, 76 Hawai'i 396, 402, 879 P.2d 501, 507 (1994). Nevertheless, even though taxation of costs and attorneys' fees is essentially an award of damages that may involve certain factual determinations, we held that appellate courts have jurisdiction to award attorneys' fees and costs incurred on appeal pursuant to HRS § 607–14. *Id.* at 399, 879 P.2d at 504. It follows, then, that appellate courts have jurisdiction to make factual determinations in the limited context of taxing attorneys' fees and costs incurred *on appeal.* Inasmuch as application of the *Uyemura* rule to the awarding of attorneys' fees incurred on appeal will not expand the fact-finding activity of the appellate courts beyond that currently undertaken on a regular basis, the DOT's first argument—that appellate courts are not competent to make these determinations—is misplaced.

A close examination of this court's past application of the *Uyemura* rule reveals that the DOT's second argument is equally unpersuasive. In *Lee v. Aiu, supra,* Lee was the owner of a piece of real property, who sued Aiu, the co-signee of her mortgage (and whose name appeared on the deed to the property as a joint tenant), and Aiu's real estate agents, the Dixons, when the Dixons induced Aiu to sell his interest in the property to them after first agreeing to remove his name from the deed in exchange for the receipt of $25,000.00 from Lee. 85 Hawai'i at 23–26, 936 P.2d at 659–62. Lee sought (1) ·reformation of the deed, (2) specific enforcement of the agreement with Aiu, and (3) damages for (a) negligent and/or intentional infliction of emotional distress, (b) tortious interference with contractual relationship (TICR), and (c) intentional tort/malice/negligence. *Id.* at 26, 936 P.2d at 662.

When the Dixons appealed a judgment against them in favor of Lee, Lee cross-appealed, arguing that the trial court had erred in refusing to allow her to introduce evidence of her attorneys' fees incurred in litigating with Aiu as an element of her damages in the TICR claim. *Id.* at 28, 32, 936 P.2d at 664, 668. Agreeing with Lee, this court remanded the case for a new trial on the issue of damages, with instructions that Lee be allowed to introduce evidence of the attorney's fees she incurred in litigation with Aiu that were caused by the Dixons' interference with the contract between Lee and Aiu. *Id.* at 35–36, 936 P.2d at 671–72.

 Clearly, the Dixons' actions were not the sole cause of the injuries to Lee; Aiu's own conduct was, in part, responsible. Nevertheless, citing *Uyemura*, this court held that, insofar as "Lee became involved in a legal dispute with Aiu because of the Dixons' tortious interference with the contractual relation between Lee and Aiu," Lee was entitled to recover "that portion of [her] attorney's fees ... attributable to [her] litigation with [Aiu]" from the Dixons. Accordingly, the DOT's contention that a defendant's wrongful act must be the *sole* cause of a plaintiff's litigation with a third party in order to enable the plaintiff to recover attorneys' fees expended in the third-party litigation is without merit.

 We therefore hold that the *Uyemura* rule may be applied by appellate courts, as warranted, in taxing attorneys' fees and costs incurred on appeal.

C. *Inasmuch As Steel And Kiewit Prevailed On The Principal Issues Raised On Appeal, They Are "Prevailing Parties" For The Purpose Of Awarding Attorneys' Fees And Costs.*

 A party need not "sustain his entire claim" in order to be a "prevailing party" for purposes of entitlement to costs and attorneys' fees. *MFD Partners v. Murphy*, 9 Haw.App. 509, 514, 850 P.2d 713, 716 (1992). On the contrary, the Intermediate Court of Appeals (ICA) has held that

"where a party prevails on the disputed main issue [in a case], even though not to

the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees." *Food Pantry, Ltd.[ v. Waikiki Business Plaza, Inc.],* 58 Haw. [606,] 620, 575 P.2d [869,] 879 [ (1978) ]. The ... court is required to first identify the principal issues raised by the pleadings and proof in a particular case, and then determine, on balance, which party prevailed on the issues. *Id.*

*MFD Partners,* 9 Haw.App. at 515, 850 P.2d at 716 (some brackets added and some in original).

█ From the beginning, the principal question at issue in this case, both at trial and on appeal, was whether the DOT had breached its contract. Both Steel and Kiewit consistently maintained that it had and that Fought was entitled to the full contract price for the steel used in the construction of the terminal building. Their secondary argument—that if the DOT was not liable on its contract, then neither were they—was purely defensive and advanced to avoid liability for breach in the event that the DOT was somehow successful in itself avoiding liability. Inasmuch as the DOT was unsuccessful, the circuit court's judgment against it being affirmed, Steel and Kiewit can fairly be said to have prevailed "on the disputed main issue" and therefore are entitled to recoup all of their litigation expenses pursuant to HRS § 607–14.

█ The *Uyemura* rule reinforces the foregoing conclusion. *See supra* section II. B.2. As we have indicated, in order to recover costs and attorneys' fees under *Uyemura,* a party must establish that: (1) it became involved in a legal dispute because of the wrongful act of the party to be charged; (2) the resulting litigation was with a third party; (3) the attorneys' fees and costs sought to be charged were incurred in the third-party litigation; (4) the attorneys' fees and costs incurred were the natural and necessary consequences of the wrongful act of the party to be charged; and (5) the fees and costs are reasonable. *Uyemura,* 57 Haw. at 109, 551 P.2d at 176; *Occidental Underwriters of Hawaii, Ltd. v. American Sec. Bank,* 5 Haw. App. 431, 433–34, 696 P.2d 852, 854 (1985).

█ We note that the *Uyemura* rule does *not* require that the party seeking recovery of expenses "prevail" in the third-party litigation. *Occidental Underwriters,* in which a mortgagor and mortgagee were sued by an insurer when the mortgagee failed to make a premium payment, is a case in point. 5 Haw.App. at 432, 696 P.2d at 853. Eventually, the mortgagee and the insurer settled the dispute between themselves and moved to dismiss the case. *Id.* at 433, 696 P.2d at 853. However, the mortgagor had filed a cross-claim against the mortgagee, alleging that the failure to pay had constituted a negligent act and that the mortgagor was therefore entitled to recoup its attorneys' fees from the mortgagee. *Id.* at 432, 696 P.2d at 853. When the trial court dismissed the cross-claim in response to the mortgagee's motion for summary judgment, the ICA reversed and, citing *Uyemura,* remanded for determination as to whether the mortgagee's conduct had been negligent or in breach of an agreement and for the entry of an award of attorneys' fees in favor of the mortgagor should either of the foregoing conditions be met. *Id.* at 434, 696 P.2d at 854. *See also Boudreau v. General Elec. Co.,* 2 Haw.App. 10, 18, 625 P.2d 384, 390 (1981) (stating in dictum that retailer, who incurred expenses defending against claims of strict liability and negligence only because it stood in stream of commerce between manufacturer and injured consumer, was entitled to indemnification from manufacturer).

The underlying dispute in *Occidental Underwriters* was settled in favor of the insurer; the mortgagor and mortgagee did not prevail. The mortgagee was nevertheless entitled to recover his attorneys' fees from the mortgagor if the mortgagee's involvement in the lawsuit arose from a wrongful act of the mortgagor. Analogously, even though Steel and Kiewit did not "prevail" in their cross-appeals, which were mooted by the outcome of the DOT's appeal, they are entitled to recover their expenses, incurred in litigating with Fought and Steel, from the DOT if (1) their involvement in the litigation occurred because of a wrongful act committed by the DOT, and (2) the expenses were the natural and necessary consequences of that act. The

**54**

DOT's breach of its agreement was been established by way of the judgment entered against it at trial, and the judgment has been affirmed on appeal. Given the nature of the contractual relationships among the parties, it was reasonably foreseeable that the DOT's refusal to pay Kiewit would cascade down the payment chain and that this lawsuit for breach of contract would result.

The DOT's argument that Steel and Kiewit's expenses were "unnecessary" is unpersuasive, inasmuch as it is based upon the naive assertion that Steel and Kiewit should have paid Fought following the entry of judgment by the circuit court and then simply waited until the conclusion of the DOT's appeal to—possibly—collect indemnification from the DOT. The DOT's proposed scenario is unreasonable for two reasons. First, such a payment would have deprived Steel and Kiewit of the use of their money for the duration of whatever period of time was necessary for the prosecution of the DOT's appeal—with little likelihood that their opportunity costs would ever be recovered. Second, had the DOT been successful in its appeal— for example, if its claim of sovereign immunity had allowed it to escape liability under its contract—, Steel and Kiewit would then have been solely liable for payment of the judgment in favor of Fought with no avenues available for recovering their costs.

It is unreasonable to expect a business to place itself in such a vulnerable and avoidable position. Steel's and Kiewit's litigation strategy was necessary to maintain their financial integrity. To penalize them for protecting themselves from the threat of loss would be to violate the "basic concept of contract law ... that a party who sustains a loss by the breach of another is entitled to compensation that will actually or precisely as possible compensate the injured party." *Hi Kai Inv., Ltd. v. Aloha Futons Beds and Waterbeds*, 84 Hawai'i 75, 80, 929 P.2d 88, 93 (1996) (quoting *Amfac v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 128, 839 P.2d 10, 32, *reconsideration denied* 74 Haw. 650, 843 P.2d 144 (1992) (citing *Ferreira v. Honolulu Star-Bulletin, Ltd.*, 44 Haw. 567, 573–74, 356 P.2d 651, 655, *reh'g denied*, 44 Haw. 581, 357 P.2d 112 (1960))).

For the reasons outlined above, we hold that Steel and Kiewit are entitled to recovery of the expenses that they incurred in litigation with Fought and Steel, respectively, from Kiewit and the DOT.

**D. *Inasmuch As The Present Action Is In The Nature Of Assumpsit, The Doctrine of Sovereign Immunity Does Not Bar Taxation of Fees Against the DOT.***

██ Finally, the DOT argues that the doctrine of sovereign immunity forecloses Kiewit from being awarded costs and attorneys' fees against it. This question would appear to have been settled by *Hawaiian Isles Enterprises v. City and County of Honolulu*, 76 Hawai'i 487, 493, 879 P.2d 1070, 1076 (1994), which overruled the 104–year–old holding of *Bowler v. Board of Immigration*, 7 Haw. 715 (1889), which prohibited taxation of attorneys' fees against government entities. The DOT argues, however, that either (1) *Hawaiian Isles* is limited to its facts and is therefore applicable only where the government entity involved is a municipal corporation, or (2) if *Hawaiian Isles* is dispositive, that case was wrongly decided and should be overruled to the extent that it serves as authority for the imposition of attorneys' fees against state agencies under HRS § 607–14 in claims jurisdictionally grounded in HRS ch. 661. The DOT's arguments are not persuasive.

██ This court stated in *Hawaiian Isles* that "HRS § 607–14 governs the award of attorneys' fees 'in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing' and does not limit an award of attorneys' fees to nongovernmental parties." *Hawaiian Isles*, 76 Hawai'i at 493, 879 P.2d at 1076. "Considerations of *stare decisis* have particular strength ... where 'the legislative power is implicated, and [the legislature] remains free to alter what we have done.' " *Ankenbrandt v. Richards*, 504 U.S. 689, 700, 112 S.Ct. 2206, 2213, 119 L.Ed.2d 468 (1992) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73, 109 S.Ct. 2363, 2370–71, 105 L.Ed.2d 132 (1989)). *Hawaiian Isles* was decided in 1994. The legislature has had

numerous opportunities to correct our interpretation of HRS § 607–14 if it deemed that interpretation to be mistaken. It has not done so. Accordingly, we can only presume that the legislature agrees with our interpretation, and we can discern no good reason to change it.

 "[T]he sovereign state is immune from suit for money damages, except where there has been a 'clear relinquishment' of immunity and the State has consented to be sued." *Bush v. Watson,* 81 Hawai'i 474, 481, 918 P.2d 1130, 1137 (1996) (citing *Pele Defense Fund v. Paty,* 73 Haw. 578, 607, 837 P.2d 1247, 1265 (1992), *cert. denied,* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 671 (1993)). However, the State has clearly relinquished its immunity from suit as to "[a]ll claims against the State founded . . . upon any contract, express or implied, with the State[.]" *See supra* note 6. Furthermore, "under HRS § 607–14, attorneys' fees may be awarded in . . . *all* actions in the nature of assumpsit[.]" *Eastman v. McGowan,* 86 Hawai'i 21, 31, 946 P.2d 1317, 1327 (1997). Neither the plain language of HRS § 607–14 nor of any other statute restricts the former's application to non-governmental parties.

 The unrestricted application of HRS § 607–14 is noteworthy, inasmuch as the liability of state agencies for certain other litigation-related expenses is expressly restricted elsewhere. For example, HRS § 607–24 (1993) provides, *inter alia,* that state agencies are exempt from requirements that a bond be posted for costs, on a motion for new trial, or on appeal. Similarly, HRS § 661–8 expressly prohibits an award of prejudgment interest against state agencies. *See supra* note 7. This court has consistently applied the rule of *expressio unius est exclusio alterius*—the express inclusion of a provision in a statute implies the exclusion of another—in interpreting statutes. *See, e.g., Keliipuleole v. Wilson,* 85 Hawai'i 217, 227, 941 P.2d 300, 310 (1997); *State v. Cornelio,* 84 Hawai'i 476, 495 n. 33, 935 P.2d 1021, 1040 n. 33 (1997); *State v. Arceo,* 84 Hawai'i 1, 29 n. 38, 928 P.2d 843, 871 n. 38 (1996); *International Sav. and Loan Ass'n v. Wiig,* 82 Hawai'i 197, 200, 921 P.2d 117, 120 (1996). Applied here, the rule leads to the conclusion that, where

the state's liability has not been expressly restricted, normal contract remedies are available against state agencies.

The view that a waiver of sovereign immunity in contract and other cases renders the state liable to the same extent as other litigants has been adopted by many other jurisdictions that have addressed the issue. *See, e.g., Division of Child Support Enforcement v. Smallwood,* 526 A.2d 1353, 1355 (Del.1987) ("The requirement of mutuality of obligation is the basis for finding a waiver of sovereign immunity whenever the State enters into a contractual relationship which may require judicial enforcement."); *Fru–Con Constr.,* 426 S.E.2d at 910 ("The constitutional waiver of sovereign immunity in contract actions against the state is *not* limited to a waiver of only certain elements of recoverable compensatory damages." (Emphasis in original.)); *Inmates of B–Block v. Jeffes,* 87 Pa.Cmwlth. 98, 483 A.2d 569, 572 (1984) ("[S]overeign immunity does not preclude an assessment of costs against the Commonwealth where the underlying suit was not barred[.]"); *In the Interest of R.M.H., R.R., & M.G.M., Minor Children,* 843 S.W.2d 740, 742 (Tex.Ct.App. 1992) ("Generally, when the State enters court as a litigant, it places itself on the same basis as any other litigant. Ordinarily, in the absence of a statute exempting a governmental unit from the payment of court costs, it is just as liable as any other litigant." (Citations omitted.)).

In an attempt to avoid the plain meaning of HRS § 607–14, the DOT cites *A.C. Chock, Ltd. v. Kaneshiro,* 51 Haw. 87, 451 P.2d 809 (1969), for the proposition that an award of attorneys' fees pursuant to HRS § 607–14 is precluded by the principle that statutes of general applicability do not bind the state unless their plain language expressly so indicates. *Chock,* however, is distinguishable from the matter before us. In *Chock,* the state sold a parcel of real property subject to a condition that the purchaser construct a dwelling on the property within a specified period of time. 51 Haw. at 88, 451 P.2d at 811. When the purchaser failed to pay the builder for the required construction, the builder attempted to enforce a mechanic's lien against the property. *Id.* The builder

56

conceded that, under existing law, a proceeding against property in which the state had an interest was prohibited. *Id.* He argued, however, that the state had waived its immunity when it entered into the contract for the sale of the property and had thereby become subject to the same liability as any other vendor. *Id.* at 90–91, 451 P.2d at 812. This court rejected his argument and affirmed the circuit court's dismissal of the action, reasoning that the general language of the statute authorizing the sale of public lands could not be construed as a waiver of sovereign immunity. *Id.* at 91, 451 P.2d at 812.

 Thus, in *Chock*, there was no clear waiver of the state's sovereign immunity from suit. Were the same true here, the imposition of costs and attorneys' fees against the DOT would obviously be prohibited. However, in contrast to the statute at issue in *Chock*, HRS § 661–1(1) *expressly* waives the state's immunity from suit "upon any contract, expressed or implied[.]" When the state has consented to be sued, its liability is to be judged under the same principles as those governing the liability of private parties. *See Figueroa v. State*, 61 Haw. 369, 376–77, 604 P.2d 1198, 1202 (1980). As discussed *supra* in section II.B.2, HRS § 607–14 does not create a novel claim for relief, but merely establishes the circumstances under which the prevailing party in any action "in the nature of assumpsit" or on some "other contract" may recover the expenses of litigation as an additional element of the prevailing party's damages. Accordingly, a further waiver of sovereign immunity is not necessary in order for HRS § 607–14 to apply to the state and its respective agencies in matters in which, by virtue of the express waiver of sovereign immunity set forth in HRS § 661–1, the state (or any of its agencies) has become a party.

E. *The Parties May Only Recover Attorneys' Fees Reasonably Incurred On Appeal.*

 The only remaining question is whether the parties requesting taxation of attorneys' fees and costs have met the requirements of HRS § 607–14 and HRAP Rule 39. Steel and the DOT have argued that Fought's request for attorneys' fees is

unreasonable because (1) it includes fees for services rendered in the trial court after the notice of appeal was filed and (2) some of the charges claimed by Fought's general counsel (a) are duplicative of charges also claimed by Fought's Hawai'i counsel and (b) relate solely to communications between Fought's general counsel and Hawai'i counsel.

 Our review of Fought's billing statements persuades us that the foregoing arguments are well taken. Fought's Hawai'i counsel records 9.6 hours of works performed in preparation of a motion for attorneys' fees filed in the trial court. The billing statement submitted by Fought's general counsel indicates that twelve hours were billed for the same activity. Fought's general counsel also claims 4.5 hours expended in forwarding faxes from Hawai'i counsel to Fought and summarizing teleconferences conducted with Hawai'i counsel. Steel and the DOT correctly assert that Fought's Hawai'i counsel could as easily have communicated directly with Fought and thus avoided these expenses. Because they appear unreasonable, we will not allow the taxation of these costs. Accordingly, the attorneys' fees requested by Fought's Hawai'i counsel are reduced by $1872.00, and the sum requested by Fought's general counsel is reduced by $2475.00. We have reviewed the remaining requests for costs and attorneys' fees and find them to be both reasonable and properly submitted.

III. *CONCLUSION*

Fought's request for costs and Steel's and Kiewit's requests for costs and attorneys' fees are allowed as submitted. Fought's request for attorneys' fees is reduced in the amount of $4347.00, which is attributable to professional services that we have deemed unreasonable to tax against the non-prevailing party. Accordingly, Steel is ordered to pay to Fought a total of $40,052.03—$39,888.83 for attorneys' fees and $163.20 for costs. Kiewit is ordered to pay Steel a total of $78,329.37—$40,052.03 for the costs and attorneys' fees taxed against Steel and in favor of Fought, $22,005.58 for Steel's attorneys' fees, and $16,271.76 for Steel's costs on appeal. The DOT is ordered to pay Kiewit

$120,554.60—$78,329.37 taxed against Kiewit and in favor of Steel, $30,919.89 for Kiewit's attorneys' fees, and $11,305.34 for Kiewit's costs on appeal.