**Electronically Filed
Supreme Court
SCWC-14-0001138
24-DEC-2019
09:34 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

TITLE GUARANTY ESCROW SERVICES, INC.,
a Hawai'i corporation, Respondent/Plaintiff-Appellee,

v.

WAILEA RESORT COMPANY, LTD., a Hawai'i corporation,
Respondent/Defendant/Cross-claim Defendant/
Cross Claimant-Appellee,

and

MICHAEL J. SZYMANSKI,
Petitioner/Defendant/Cross Claimant/Third-party Plaintiff/Cross-
claim Defendant/Third-party Counterclaim Defendant-Appellant,

and

ADOA-SHINWA DEVELOPMENT CORPORATION, a Hawai'i corporation,
and SHINWA GOLF HAWAI'I CO., LTD, a Hawai'i corporation,
Respondents/Third-party Defendants/Cross-claim Defendants/
Third-party Counterclaimants-Appellees.

_____

SCWC-14-0001138

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001138 and CAAP-16-0000034; 1CC021000352)

DECEMBER 24, 2019

NAKAYAMA, ACTING C.J., McKENNA, POLLACK, AND WILSON, JJ., AND
CIRCUIT COURT JUDGE REMIGIO IN PLACE OF RECKTENWALD, C.J.,
RECUSED

OPINION OF THE COURT BY McKENNA, J.

# I. Introduction

This consolidated appeal arises from the fourth and sixth in a series of six appeals from a lawsuit in the Circuit Court of the Second Circuit (referred to as "the circuit court" unless relevant to this appeal). The parties are Michael J. Szymanski ("Szymanski"), Wailea Resort Company ("Wailea"), and ADOA-Shinwa Development and Shinwa Golf Hawai'i Company (collectively "Shinwa"). The litigation concerns a dispute arising from a 1999 contract regarding the sale of approximately twenty-three acres of land in Honualua, Maui ("the Property").

Szymanski's application for writ of certiorari ("Application") raises seven questions.[1] Five of Szymanski's questions relate to whether the Honorable Rhonda I.L. Loo's ("Judge Loo") interest in Alexander & Baldwin ("A & B"), which she had disclosed in financial disclosure statements but not on the record in the lawsuit, required her recusal. We hold the ICA did not err in its application of the "law of the case" doctrine to refuse further consideration of Judge Loo's recusal because the issue had already been raised and decided against Szymanski in the third appeal and no cogent reasons, patent error, or exceptional circumstances existed to set aside its

---

[1] See Section II(D), infra.

prior rulings.  Therefore, Szymanski's questions relating to the disqualification of Judge Loo are without merit.

Szymanski also asks whether the ICA gravely erred when it declined to review whether the Honorable Peter T. Cahill's ("Judge Cahill") 2015 order entering final judgment improperly dismissed with prejudice Szymanski's third-party complaint against Shinwa.  We hold the ICA also did not err in its application of the law of the case doctrine to this issue because it had affirmed the 2010 Judgment that dismissed Szymanski's third-party complaint in Appeal 2 and no cogent reasons, patent error, or exceptional circumstances existed to set aside its prior ruling.

Szymanski's final question is whether the ICA gravely erred in affirming the circuit court's order disbursing funds to Wailea, which was based on the ICA's affirmance of Judge Loo's 2004 summary judgment orders ruling that Szymanski had breached the contract.  The law of the case doctrine does not apply to this issue.  We hold the ICA erred by holding Wailea was "clearly entitled" to the funds and by affirming the circuit court's disbursal of funds because Szymanski's $50,000 deposit was not a "Downpayment" as defined by the contract.

We therefore affirm in part, and vacate in part, the ICA's October 5, 2018 judgment on appeal, and we remand this case to

3

the circuit court for further proceedings consistent with this opinion.

## II. Background

### A. Factual Background

On May 5, 1999, Wailea ("Seller") and Szymanski ("Buyer") entered into a Land Sales Contract ("Contract") for the sale of property in Honualua, Maui. Under the Contract, Szymanski was required to make specified downpayments ("Downpayments") and deposit the balance of the full purchase price for the property into escrow before the closing date.

Paragraph 1.3 of the Contract defined "Downpayments" as "[t]he Initial Downpayment and Additional Downpayments to be made by Buyer on the Purchase Price, as defined in paragraph 3.1 and paragraph 3.2." Paragraph 3 of the Contract contained the parties' original agreements regarding the purchase price and Downpayments.

Paragraph 22.1(a) of the Contract regarding Seller's remedies on default provided, in relevant part, that if default occurred "prior to the date the Deed is filed . . . Seller's sole remedy shall be to cancel this Contract, whereupon all rights of Buyer and duties and obligations of Seller shall terminate, and Seller shall be entitled to retain all of the Downpayments as Seller's sole and absolute property as

4

compensation for Seller's costs in negotiating and preparing this Contract and for the damage caused by the default, Buyer hereby agreeing that the Downpayments represent fair and reasonable compensation to Seller for the default . . . ."

Paragraph 34 of the Contract provided, in part, that "[a]ny modifications of this Contract must be in writing and signed by the parties thereto."  The record does not reflect any modification to Paragraph 22.1(a) of the original Contract.

Five successive written amendments to the Contract were then signed by the parties.  Each amendment provided that "[a]ll other terms and provisions of the Contract shall remain in full force and effect, and are unchanged by this Amendment."

The First Amendment and Second Amendment, in relevant part, extended the closing date.  The Third Amendment amended the entirety of Paragraph 3 governing the purchase price, the Downpayments, and the closing date, but the Third Amendment was again superseded by the June 30, 2000 Fourth Amendment, which provided in relevant part as follows:

> 3.  Purchase Price.  Buyer shall pay to Seller, in United States legal tender, the Purchase Price of FOUR MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($4,550,000.00) for the Property as follows:
>
> 3.1  Initial Downpayment.  Buyer shall deposit into Escrow an initial downpayment (the "Initial Downpayment") of FORTY THOUSAND DOLLARS ($40,000) upon execution of the Contract.  THIRTY NINE THOUSAND DOLLARS ($39,000) of the Initial Downpayment, plus interest earned on this portion of the Initial Downpayment while in escrow, shall be refundable, if closing does not occur by June 30, 2000.

5

3.2   Additional Downpayment.  Buyer shall deposit into Escrow an Additional Downpayment of FORTY THOUSAND DOLLARS ($40,000) on or before July 4, 1999. Such Additional Downpayment of FORTY THOUSAND DOLLARS ($40,000), plus interest earned on this Additional Downpayment while in escrow, shall be refundable, if closing does not occur by April 28, 2000.

3.3   Balance of Purchase.  Buyer shall pay to Seller the balance of the Purchase Price (Purchase Price less Initial Downpayment (or portion thereof) deposited into Escrow and interest earned thereon), on the Closing Date.

3.4   Interest on Downpayments.  All Downpayments shall be deposited with Escrow and shall be credited to the Purchase Price, unless refunded in accordance with Sections 3.1 and 3.2 above.  Any interest earned on the Downpayments while in Escrow shall be credited to Buyer at closing; provided, however, if the Downpayments are paid to Seller because of an Event of Default or because of a cancellation of this Contract (except as otherwise provided), all such interest shall be paid to Seller.  Buyer shall be responsible for instructing Escrow on the manner in which the Downpayments are to earn interest.[2]

Paragraph 4 of the Fourth Amendment also amended the closing date to August 31, 2000, or "[s]uch other date as mutually agreed upon in writing by Seller and Buyer."

The September 18, 2000 Fifth Amendment extended the closing date to "(a) The earlier of March 3, 2001, or issuance of Final Subdivision Approval from the County of Maui for the Property; (b) That date determined by Buyer, in writing, that is between ten (10) working days from the date the Seller receives a partial release of mortgage for the Property from its mortgagee, which Seller agrees to obtain from its mortgagee as soon as

---

[2]    As can be seen, as of the June 30, 2000 Fourth Amendment, the dates of the May 5, 1999 "Initial Downpayment" and July 4, 1999 "Additional Downpayment" had long since passed.

6

practical, and 4(a) above; or (c) Such other date as mutually agreed upon in writing by Seller and Buyer."

It appears that, at some point, the closing date was scheduled for March 30, 2001.  On April 6, 2001, Wailea sent a letter to Szymanski alleging he had breached the terms of the Contract, as amended, by failing to deposit the balance of the purchase price in escrow.  Wailea stated it would extend the closing date to no later than April 20, 2001, provided Szymanski deposit an additional $49,000 downpayment in escrow by April 11, 2001, "of which $10,000.00 shall not be refundable," and the remainder of the purchase price in escrow by April 14, 2001.  The record does not reflect Szymanski's written agreement to this letter.

Instead, on April 23, 2001, Szymanski deposited $50,000 with Title Guaranty Escrow Services ("TG Escrow") with a letter asserting he was not at fault for the delay in closing due to Wailea having waited until the last minute to survey the Property, which had revealed two encroachments, and indicating he had yet to receive a copy of the ALTA owner's pro forma policy, but also stating, "I am providing additional escrow funds to show my good faith in closing this purchase transaction . . . . Attached please find my check in the amount of $50,000 (FIFTY THOUSAND DOLLARS) to be applied towards the

7

purchase price of the Wailea SF-S parcel or its development costs, at my option." No reference to Wailea's April 6, 2001 letter or "Downpayment" was contained in this letter.

It appears the parties thereafter met on May 18, 2001, and agreed to extend the closing date to June 8, 2001. Closing did not occur on that day, however, apparently because Szymanski had not deposited the balance of the purchase price into escrow and had not specified how title to the Property would be taken. Wailea then sent a letter extending the closing date to June 28, 2001. It appears that by July 2, 2001, only the funding issue remained outstanding, and Wailea offered to extend the closing date to July 13, 2001, with the remaining funds to be deposited by July 12, 2001. When Szymanski did not deposit the remaining funds, Wailea sent Szymanski a letter dated July 26, 2001, stating he was in default and that it was electing to cancel the Contract.

## B. Procedural Background

### 1. Filing of lawsuit and previous appeals

In 2002, TG Escrow filed an interpleader action in circuit court (Civil No. 02-1-0352(2)) to determine how it should disburse approximately $51,000 in escrow funds ("escrow funds"

8

or "funds"), naming Wailea and Szymanski as defendants.[3] The parties then stipulated to have TG Escrow deposit the funds with the court clerk in an interest-bearing account. On March 20, 2003, the court entered a judgment on the interpleader claim pursuant to Hawai'i Rules of Civil Procedure ("HRCP") Rule 54(b) (2000), and TG Escrow was excused from further participation.

Szymanski filed a cross-claim against Wailea seeking specific performance of the Contract, monetary damages for breach of contract, and equitable relief based on promissory estoppel. Szymanski also filed a third-party complaint against Shinwa, Wailea's parent company that held a partial mortgage on the property, seeking to enjoin Shinwa from tortiously interfering with Szymanski's contractual relationship with Wailea. In December 2002, Szymanski recorded a notice of lis pendens on the property with the Bureau of Conveyances.

Wailea filed a cross-claim against Szymanski seeking a declaratory judgment that Wailea was entitled to disbursal of the interpleaded escrow funds. Wailea also sought a judgment declaring that Szymanski breached the Contract by failing to deposit the balance of the purchase price. Shinwa filed a

---

[3] According to Wailea and Shinwa, amendments to the Contract had allowed Szymanski to withdraw his previously deposited downpayments, and only $1,000 remained in escrow as of April 23, 2001. As noted earlier, Szymanski deposited an additional $50,000 in escrow on April 23, 2001.

counterclaim against Szymanski asserting tortious interference with business.

Wailea filed a motion for summary judgment on Szymanski's cross-claim against it.  Szymanski also filed a motion for partial summary judgment on counts I (specific performance) and III (promissory estoppel) of his cross-claim against Wailea.

At the October 6, 2004 hearing on these motions, Judge Loo ruled that Szymanski had failed to timely perform his contractual obligations, granted Wailea's motion, and denied Szymanski's motion.  Judge Loo entered an order on these rulings on October 20, 2004.  Szymanski filed a motion for reconsideration, which Judge Loo denied in a December 7, 2004 order.  These are the only two matters in this case over which Judge Loo presided and are collectively referred to as "Judge Loo's 2004 Summary Judgment Orders."

Judge Shackley Raffetto ("Judge Raffetto") then granted Szymanski's motion for HRCP Rule 54(b) certification to allow an interlocutory appeal as to Judge Loo's 2004 Summary Judgment Orders, and entered an HRCP Rule 54(b) judgment on April 20, 2005.

Szymanski filed his Rule 54(b) interlocutory appeal from Judge Loo's 2004 Summary Judgment Orders to the ICA ("Appeal 1 re Judge's Loo's 2004 Summary Judgment Orders").  On April 27,

10

2009, the ICA filed a summary disposition order ("SDO") affirming Judge Loo's 2004 Summary Judgment Orders, Title Guaranty Escrow Services, Inc. v. Szymanski, No. 27254, at 1 (App. April 27, 2009) (SDO), followed by its judgment on appeal. This court rejected certiorari on September 17, 2009.

On October 28, 2009, back in the circuit court, Wailea and Shinwa (collectively "Wailea/Shinwa") filed a motion to expunge Szymanski's lis pendens, for entry of final judgment based on the affirmance of Judge Loo's 2004 Summary Judgment Orders and/or voluntary dismissal without prejudice of the remaining claims, and for an order directing the clerk of the court to disburse the escrow funds ("2009 Wailea/Shinwa Motion"). Less than one hour before the June 30, 2010 hearing on this motion, Szymanski's attorneys filed a motion to retroactively affirm their withdrawal as counsel for Szymanski, which Judge Raffetto granted. Title Guaranty Services, Inc. v. Szymanski, No. 30697, at 2 (App. Oct. 24, 2013) (SDO). Judge Raffetto also denied Syzmanski's substitute counsel's oral request to continue the hearing.

After the hearing, an order was entered on July 19, 2010 (1) expunging Szymanski's lis pendens; (2) for entry of final judgment based on the affirmance of Judge Loo's 2004 Summary Judgment Orders and/or voluntary dismissal; and (3) directing

11

disbursal of the interpleaded escrow funds to Wailea.  A "final judgment" was entered on July 28, 2010 ("2010 Judgment") indicating, in relevant part, that judgment was entered (1) in favor of Wailea on its declaratory relief and breach of contract claims against Syzmanski in its cross-claim; (2) in favor of Wailea on all claims asserted against it by Szymanski in his cross-claim; and (3) in favor of Shinwa on all claims asserted against it by Szymanski in his third-party complaint.

On August 27, 2010, Szymanski appealed from the 2010 Judgment to the ICA ("Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa").  Szymanski raised as points of error Judge Raffetto's retroactive grant of his attorneys' motion to withdraw, the denial of his substitute counsel's oral request to continue the hearing, and the order directing disbursal of the interpleaded escrow funds to Wailea.

While Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa was pending, on September 19, 2011, Szymanski filed a HRCP Rule 60(b) motion seeking to vacate Judge Loo's 2004 Summary Judgment Orders.  Szymanski argued Judge Loo should have recused herself pursuant to Hawai'i Revised Code of Judicial Conduct ("HRCJC") Rule 2.11 (2008)[4] and Hawai'i Revised Statutes

---

[4]    HRCJC Rule 2.11 provides, in pertinent part, "a judge shall disqualify or recuse himself or herself in any proceeding in which the judge's

(continued. . .)

("HRS") § 601-7 (2004)[5] because she held shares of stock valued between $10,000 and $25,000 in A & B, as reflected in her 2003 and 2004 annual financial disclosures.[6]  Counsel for Szymanski represented he did not discover this stock ownership until shortly before May 2011.[7]

On January 4, 2012, Judge Raffetto entered an order denying the motion, ruling as follows:

---

(. . .continued)

impartiality might reasonably be questioned, including but not limited to [when] . . . (3) [t]he judge knows that he or she . . . has an economic interest in the subject matter of the controversy or in a party to the proceeding."

[5]     HRS § 601-7 provides, in pertinent part, that "[n]o person shall sit as a judge in any case in which . . . the judge has, either directly or through such relative, a more than de minimis pecuniary interest . . . ."

[6]     Rule 15 of the Rules of the Supreme Court of the State of Hawaiʻi ("RSCH") requires all judges to file an annual financial disclosure statement identifying financial interests of the judge, the judge's spouse or domestic partner, and any dependent children, to include "[t]he amount and identity of every ownership or beneficial interest held during the disclosure period in any business incorporated, regulated, or licensed to carry on business in the State that has a value of $5,000 or more or that is equal to 10 percent of the ownership of the business . . . ."  RSCH Rule 15(d)(2) (2017).

[7]     The HRCP Rule 60(b) motion was based on the following factual background.  In October 2003, a limited warranty deed had been recorded transferring the Property from Wailea to Wailea Estates.  A & B Properties was the listed member/manager in Wailea Estates's business filings.  Szymanski averred A & B Properties was owned by A & B.
    The limited warranty deed stated the transfer to Wailea Estates was subject to the terms and provisions contained in the December 6, 2002 lis pendens filed by Szymanski regarding his claim for specific performance of the Contract.  Szymanski argued A & B was therefore a real party in interest to the case and Judge Loo improperly presided over a matter in which she, as an A & B shareholder, would allegedly directly benefit from the outcome.  Szymanski cited the United States Supreme Court case Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) to argue that recusal is required when a judge has a financial interest in a case regardless of whether the judge knows of the interest, and if that interest is discovered later, a Rule 60(b) motion may be granted even after the case is decided on appeal.

13

> 1. The matter is moot because the Intermediate Court of Appeals affirmed [Judge Loo's Summary Judgment Orders] and there is no causation of any consequences to Mr. Szymanski from Judge Rhonda Loo's failure to recuse herself in this matter;
> 2. Mr. Szymanski failed to show any bias by the Court or Judge Loo;
> 3. Mr. Szymanski failed to show any appearance of impropriety by the Court or Judge Loo;
> 4. Mr. Szymanski failed to show any appearance of bias by the Court or Judge Loo; and
> 5. No reasonable person could find that there was any appearance of impropriety or appearance of bias by the Court or Judge Loo.

Szymanski filed a motion for reconsideration, which was heard and denied by the Honorable Blaine J. Kobayashi ("Judge Kobayashi"). (Judge Raffetto's order and Judge Kobayashi's order are collectively referred to as "the 2012 Denials of the Motions to Vacate Judge Loo's 2004 Summary Judgment Orders.")

On August 13, 2012, Szymanski appealed the 2012 Denials of the Motions to Vacate Judge Loo's 2004 Summary Judgment Orders. ("Appeal 3 re 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders"). The ICA initially ordered that this appeal be dismissed for lack of appellate jurisdiction. Szymanski filed an application for writ of certiorari, which this court accepted on August 5, 2013.

Then, with respect to Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa, in an October 24, 2013 summary disposition order, the ICA held Judge Raffetto abused his discretion by allowing Szymanski's counsel to withdraw prior to the hearing and by denying Szymanski's substitute counsel's

14

request for continuance.  Title Guaranty Escrow Services, Inc.

v. Szymanski, No. 30697, at 6-7 (App. Oct. 24, 2013) (SDO)

("Appeal 2").  The ICA stated that "in light of the above," it

would not reach the merits of Szymanski's challenge to the

disbursal of the escrow funds to Wailea, and that it would

vacate the July 19, 2010 order only with respect to the

disbursal of funds to Wailea and would affirm the 2010 Judgment

in all other respects.  Appeal 2, SDO at 7.  The ICA's January

13, 2014 judgment on appeal stated that, pursuant to its October

24, 2013 SDO, the 2010 Judgment was vacated and the case was

remanded to the circuit court.  No certiorari application was

filed.

On January 24, 2014, with respect to Appeal 3 re the 2012

Denials of the Motions to Vacate Judge Loo's 2004 Summary

Judgment Orders, this court entered a summary disposition order

holding the ICA erred when it dismissed the appeal for lack of

jurisdiction and remanded to the ICA for a decision on the

merits of that appeal.  Title Guaranty Escrow Services, Inc. v.

Szymanski, SCWC-12-0000711, at 4 (Jan. 24, 2014) (SDO).  On

remand, the ICA issued a memorandum opinion holding: (1) Judge

Loo was not required to recuse herself because her interest in A

15

& B was de minimis[8] and the circumstances did not give rise to the appearance of impropriety; and (2) there was no error in the denial of the motion to reconsider because Szymanski did not present any new evidence or arguments. Title Guaranty Services, Inc. v. Szymanski, CAAP-12-711, at 5-14 (App. August 31, 2016) (mem. op.). On January 12, 2017, this court rejected Szymanski's application for writ of certiorari from the ICA's October 3, 2016 judgment of appeal for Appeal 3 re the 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders.

### 2. Fourth and sixth appeals at issue on certiorari

#### a. Circuit court proceedings

After the January 13, 2014 ICA judgment on appeal regarding Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa, which vacated the 2010 Judgment, on March 14, 2014, Szymanski filed a memorandum in opposition to the 2009 Wailea/Shinwa motion. Szymanski argued the $50,000 he had deposited in escrow on April 23, 2001 was not a Downpayment under the Contract because (1) it was made after the dates specified in the Fourth and Fifth Amendments; (2) it was for a different amount and made after the

---

[8]    The definition section of the HRCJC provides: "De minimis" in the context of interests pertaining to disqualification of a judge, means an insignificant interest that could not raise a reasonable question regarding the judge's impartiality. See HRCJC Rule 2.11, quoted in note 4, supra.

date specified in Wailea's April 6, 2001 letter; and (3) it was not required or contemplated by the Contract. Szymanski also argued the funds were not a "Downpayment" as defined by Sections 1.3, 3.1, and 3.2 of the Contract, as amended, and therefore could not be retained by Wailea pursuant to Section 22.1(a) of the Contract. Szymanski further argued that entry of judgment as to his third-party complaint against Shinwa was not appropriate because his third-party complaint had never been disposed of or resolved.

On March 18, 2014, Wailea/Shinwa responded that the funds were a Downpayment and that Szymanski's breach of the Contract triggered Wailea's right to retain all of the Downpayments pursuant to Section 22.1(a). Furthermore, Wailea/Shinwa argued that amendments to the Contract had allowed Szymanski to withdraw his previously deposited Downpayments, that only $1,000 remained in escrow as of April 23, 2001, and that the $50,000 deposit was therefore a necessary Downpayment to extend the closing date.

While Appeal 3 re the 2012 Denials of the Motions to Vacate Judge Loo's 2004 Summary Judgment Orders was pending, on June 30, 2014, Szymanski filed yet another motion to vacate Judge Loo's 2004 Summary Judgment Orders based on her failure to recuse ("2014 Renewed Motion to Vacate Judge Loo's 2004 Summary

17

Judgment Orders").  Szymanski again argued Judge Loo indirectly benefitted from her ruling because she owned stock in A & B and the transfer of title to Wailea Estates, of which A & B Properties was a listed member/manager, was conditioned upon the resolution of this lawsuit.  Szymanski argued Judge Loo's recusal was therefore required by HRCJC Rule 2.11 and HRS § 601-7 and to avoid the appearance of impropriety.

Wailea/Shinwa responded that the "law of the case" doctrine barred Szymanski's 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders because it restated arguments already ruled upon by Judges Raffetto and Kobayashi in their 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders.

On July 25, 2014, Judge Cahill conducted a hearing on both the disbursal of interpleaded escrow funds issue remanded from Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa and the 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders.  Judge Cahill characterized the 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders as a prohibited "motion to reconsider a motion to reconsider."  He indicated he would deny the motion without prejudice, however, because Appeal 3 re the 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders was still pending.

18

Judge Cahill then indicated he would grant the remanded 2009 Wailea/Shinwa motion regarding the disbursal of interpleaded funds on the grounds that the issues had previously been determined. Although the ICA had vacated the 2010 Judgment in Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa with respect to the disbursal of funds to Wailea, Judge Cahill expressed uncertainty over whether he could order Wailea to pay back the funds, which had already been disbursed. Szymanski argued that the merits of the request for the disbursal of funds had not previously been addressed. Judge Cahill explained, "the merits that I'm talking about is the summary judgment issue . . . . [T]he issues that would determine this particular motion were determined on the merits in the summary judgment, rightfully or wrongfully. That went up on appeal. It was affirmed. Those are the merits that form this." Judge Cahill explained he was bound by the rulings within Judge's Loo's 2004 Summary Judgment Orders that Szymanski had breached the Contract and the ICA's affirmance of those orders in Appeal 1 re Judge's Loo's 2004 Summary Judgment Orders.

On August 27, 2014, Judge Cahill entered an order denying the 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders without prejudice. Also on that date, he

19

entered an order granting the 2009 Wailea/Shinwa motion ruling that Wailea was entitled to the funds in escrow.

### b. ICA proceedings

On September 26, 2014, Szymanski appealed the August 27, 2014 order denying the 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders ("Appeal 4 re the Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders").[9]

On December 23, 2015, the circuit court entered final judgment as to all claims and all parties ("2015 Final Judgment"). On January 21, 2016, Szymanski appealed the 2015 Final Judgment ("Appeal 6 re the 2015 Final Judgment").

On October 13, 2017, the ICA consolidated Appeal 4 re the 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders with Appeal 6 re the 2015 Final Judgment.

### i. Szymanski's arguments

In the consolidated appeals, Szymanski again argued the circuit court erred by (1) failing to grant his 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders; (2) by entering the 2015 Final Judgment because Szymanski's third-

---

[9] Judge Cahill entered another judgment in favor of Wailea/Shinwa on November 24, 2014. On December 4, 2014, Szymanski appealed this judgment to the ICA in CAAP-14-0001340, which was Szymanski's fifth appeal. On May 13, 2015, the ICA dismissed the fifth appeal due to lack of jurisdiction because the November 2014 judgment had not resolved all remaining claims against all parties. After the ICA dismissed the fifth appeal, Wailea/Shinwa filed a motion in the circuit court for entry of final judgment, which resulted in the December 23, 2015 Final Judgment.

party complaint against Shinwa was never resolved; and (3) by granting Wailea/Shinwa's 2009 Motion and ordering a disbursal of the escrow funds to Wailea.

Szymanski argued his 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders should have been granted because Judge Cahill did not address Judge Loo's appearance of impropriety for owning stock in A & B. Szymanski also argued that, based on Liljeberg, 486 U.S. 847, a judge may still be required to recuse despite a lack of knowledge of a conflict. Szymanski argued that Judge Loo's interest in A & B therefore required her recusal under HRCJC Rule 2.11(a)(3) and HRS § 601-7.

With respect to the disbursal of funds, Szymanski argued the circuit court erred because it did not consider the merits of Szymanski's arguments on remand, but held that it was bound by the ICA's affirmance of Judge Loo's 2004 Summary Judgment Orders, which included a finding that Szymanski had breached the Contract. Szymanski argued Judge Loo's rulings did not address the disbursal of the escrow funds, and the ICA had specifically remanded the case for the disbursal issue to be heard on the merits. Szymanski also restated his argument that the $50,000 was not a Downpayment under the Contract.

Szymanski also argued the circuit court erred by entering final judgment because Szymanski's third-party complaint against Shinwa was "never disposed of or resolved."

### ii.  Wailea/Shinwa's arguments

Wailea/Shinwa argued the matter of Judge Loo's recusal had been fully addressed on the merits in Appeal 3 re the 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders.  Wailea/Shinwa also argued Szymanski's recusal argument failed because (1) there was no evidence Judge Loo knew of Wailea Estates's purchase of the property; (2) Judge Loo's minimal interest in A & B did not give rise to an appearance of impropriety; and (3) Liljeberg was factually distinguishable from this case.

Wailea/Shinwa also contended that Szymanski waived the argument regarding his third-party complaint against Shinwa because he did not raise it in Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa.

Wailea/Shinwa argued the circuit court did not err in ordering the disbursal of escrow funds to Wailea because Szymanski breached the Contract as amended, which the ICA affirmed in Appeal 1 re Judge Loo's 2004 Summary Judgment Orders, and the $50,000 deposit was a "Downpayment" that Wailea was entitled to retain under the Amended Contract.

22

Wailea/Shinwa asserted Szymanski had an opportunity to argue the disbursal of funds issue on the merits, and the circuit court stated its ruling was based on "all of the arguments and memoranda" filed.

Finally, Wailea/Shinwa argued the circuit court did not err in entering final judgment because the ICA affirmed the 2010 Judgment in Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa in all aspects except the disbursal of funds.

### iii. ICA's SDO in consolidated Appeals 4 and 6

On June 29, 2018, the ICA filed an SDO in the consolidated appeals. Title Guaranty Escrow Serv., Inc. v. Szymanski, CAAP-14-0001138 and CAAP-16-0000034 (App. June 29, 2018) (SDO) ("Appeals 4 & 6"). The ICA characterized Szymanski's points of error as: "(1) that Judge Loo should have recused herself from the case; (2) that the Circuit Court erred in granting final judgment in favor of Wailea;" and "(3) that the Circuit Court erred in granting Wailea's motion to disburse funds to Wailea . . . ." Appeals 4 & 6, SDO at 3.

First, as to whether Judge Loo was required to recuse herself, the ICA noted it had reviewed the issue in Appeal 3 re the 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders and concluded that Judge Loo's A & B stock ownership was de minimis and too remote of a financial interest

23

to require disqualification.  Id.  The ICA stated that in Appeal 3, it had concluded that Judge Loo's interest in a non-party subsequent purchaser did not objectively give rise to the appearance of impropriety.  Appeals 4 & 6, SDO at 3-4. Additionally, the ICA noted it had concluded in Appeal 3 that Liljeberg was factually distinguishable and did not require Judge Loo's recusal.  Appeals 4 & 6, SDO at 4.  The ICA held that, because Szymanski's recusal argument rested on the same ground as his argument in Appeal 3, "under the law of the case doctrine, we are barred from re-examining an identical claim in this appeal."  Id. (citing Fought & Co., Inc. v. Steel Eng'g and Erection, Inc., 87 Haw. 37, 48-49, 951 P.2d 487, 498-99 (1998)).

With respect to whether Judge Cahill erred in entering the 2015 Final Judgment when "the third-party complaint against Shinwa had not been resolved," the ICA noted it had reviewed and affirmed the 2010 Judgment "with the exception of vacating and remanding on the disbursement issue" in Appeal 2 re 2010 the Final Judgment in Favor of Wailea/Shinwa.  Id.  The ICA ruled Szymanski's argument in the current consolidated appeals was based on the same allegation in Appeal 2 that his third-party claim remained active.  Id.  The ICA held that Szymanski's arguments related to the 2015 Final Judgment were thus also barred by the law of the case doctrine.  Id.

24

With regard to the whether the circuit court erred when it granted Wailea's motion for disbursal of funds, the ICA first noted it had affirmed the orders finding that Szymanski breached the contract in Appeal 1 re Judge Loo's 2004 Summary Judgment Orders. Appeals 4 & 6, SDO at 5. The ICA then interpreted the provisions of the Contract. Id. The Contract provided that, in the event of default, which included Szymanski's failure to perform his obligations under the Contract, Wailea "shall be entitled to retain all of the Downpayments as Seller's sole and absolute property as compensation for Seller's costs in negotiating and preparing this Contract and for the damage caused by the default . . . ." Id. (quoting Section 22.1(a) of the Contract). The ICA explained that although the "Initial Downpayment" was originally non-refundable, the Fourth Amendment to the Contract made "the entire down payment refundable, if closing does not occur by June 30, 2000," and also required an "Additional Downpayment" of $40,000, which would be refundable if closing did not occur by April 28, 2000. Id. The Fourth Amendment stated all other provisions and terms of the Contract remained in effect. Id.

According to the ICA, due to the Fourth Amendment, Szymanski "could have been refunded his downpayments up to the point of default." Appeals 4 & 6, SDO at 6. The ICA held,

25

however, that because Szymanski breached the contract, "Wailea was clearly entitled to retain the downpayments as compensation for costs and damages." Id. Thus, the ICA ruled the circuit court did not err in granting Wailea's motion for disbursal of the funds. Id.

The ICA therefore affirmed the circuit court.

**D. Application for Writ of Certiorari**

Szymanski raises the following seven questions on certiorari:

> [1.] Did the ICA Gravely Err When It Relied on Its Previous Decision in This Same Matter (*Appeal 3*), Stating That It Was Bound by that "Law of the Case", When: (1) the ICA Had No Appellate Jurisdiction in The Previous Matter (*Appeal 3*) and (2) Because that Previous Appeal Arose from a Different Legal Standard of Review and a Different Legal Basis (A PRE final-judgment motion in *Appeals 4&6*) vs. a POST final-judgment motion in *Appeal 3*)?
>
> [2.] Did the ICA Gravely Err When It Failed to Address a New Point of Error In This Appeal (NOT Raised Before in Any Other Appeals) of a Judge's Failure to DISCLOSE to the Parties That She Owned Stock in a Real Party in Interest in this Lawsuit PRIOR to It Making a Ruling(s) (Which Is A Violation HRS 601-7(a) and the HRCJC)?
>
> [3.] Did the ICA Gravely Err When It Held That Judge Loo's 2004 Rulings Without Disclosing that She Owned Stock in A&B Create an Appearance of Impropriety, Which Cannot be *De Minimis* as the Hawaii Supreme Court's Decisions in <u>Thomson v. McGonagle</u>, 33 Haw. 565 (1935) and <u>Carey v. Discount Corp.</u>, 35 Haw. 811 (1941)?
>
> [4.] Did the ICA Gravely Err When It Held a Material Fact (that Judge Loo held an interest in a SUBSEQUENT purchaser who was a non-party) that was the Exact Opposite of What Was True (A&B Had Already Bought the Land When Judge Loo Made Her Rulings), Thus Failing to Understand a Core Point of the Appeal?
>
> [5.] Did the ICA Gravely Err When It Held a Party's Third-Party Complaint Could Be Dismissed WITHOUT a Summary Judgment Motion Being Filed to Properly Dismiss It?

26

[6.] Did the ICA Gravely Err When It Failed to Order a Party's NON-Contract ($50,000 + Interest) Deposit Be Returned to That Party, Instead of to the Other Party. (Did the ICA Gravely Err When It Decided a NON-Contract Deposit Was Made Under the Contract When There Is NO Evidence in the Record That It Was Made Under the Contract?)

[7.] Did the ICA Gravely Err When It Distinguished the U.S. Supreme Court's Ruling in _Liljeberg_ by Stating that Case Showed a Direct and Documented Benefit to the Judge Where the Judge in _Liljeberg_ Was a Member of the Board of Trustees of a University?

In summary, with respect to Judge Loo, Szymanski asserts the ICA erred because it failed to address Judge Loo's duty to disclose any potential conflict of interest prior to making her rulings, which created an appearance of impropriety, and that the ICA incorrectly determined a material fact when it stated Judge Loo's interest was in a "subsequent purchaser" because Wailea Estates purchased the property a year prior to Judge Loo's rulings.[10]

Szymanski also asserts his third-party complaint against Shinwa was dismissed "with no proper motion ever being filed," and the ICA should have vacated the lower court's rulings and required Shinwa to file a summary judgment motion if it wanted those claims dismissed.

---

[10]   In his first question on certiorari, Szymanski also argues the ICA lost jurisdiction over Appeal 3 re the 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders after it vacated the 2010 Judgment in Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa. This assertion is devoid of merit, as appellate jurisdiction existed separately for both appeals.

Finally, Szymanski argues the ICA gravely erred in holding Wailea was entitled to the $50,000 deposit in the event of default. Szymanski contends that his deposit was not a "Downpayment" as defined by the Amended Contract. Szymanski maintains he had already removed the two "Downpayments" in escrow to the extent allowed by the Amended Contract, and his letter accompanying the $50,000 deposit clearly stated he retained the option to direct the funds towards either the purchase price or the development of the land, indicating it was not a "Downpayment."

### III. Standards of Review

#### A. Questions of Law

Questions of law are reviewed upon appeal under the right/wrong standard of review. Maile Sky Court Co. v. City and County of Honolulu, 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997).

#### B. Contract Interpretation

"When reviewing the court's interpretation of a contract, the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court." Mikelson v. United Servs. Auto. Ass'n, 107 Hawai'i 192, 197, 111 P.3d 601, 606 (2005) (citations and internal quotation marks omitted). Additionally,

> This court has stated that "'[a]s a general rule, the construction and legal effect to be given a

28

> question of law.'"  Found. Int'l, Inc. v. E.T. Ige Const.,
> Inc., 102 Hawaii 487, 494-95, 78 P.3d 23, 30-31 (2003)
> (quoting Hanagami v. China Airlines, Ltd., 67 Haw. 357,
> 364, 688 P.2d 1139, 1144 (1984)).  Accordingly, "[a]bsent
> an ambiguity, [the] contract terms should be interpreted
> according to their plain, ordinary, and accepted sense in
> common speech."  Id. at 495, 78 P.3d 23 (brackets in
> original, citation omitted).

Koga Eng'g & Constr., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d

979, 991 (2010).

## IV.    Discussion

## A.    The ICA did not err in applying the law of the case doctrine to Szymanski's points of error and arguments related to the issue of Judge Loo's recusal

The ICA did not err in its application of the law of the

case doctrine in ruling on the first four and seventh questions

on certiorari related to Szymanski's renewed assertion that

Judge Loo was required to recuse herself.  The ICA had

previously ruled on these issues in Appeal 3 re the 2012 Denials

of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders.

The usual practice of courts of equal and concurrent

jurisdiction is to refuse to disturb all prior rulings in a

particular case.  Chun v. Bd. of Tr. of the Emp. Ret. Sys., 92

Hawai'i 432, 441, 992 P.2d 127, 136 (2000).  Thus, "[u]nless

cogent reasons support the second court's action, any

modification of a prior ruling of another court of equal and

concurrent jurisdiction will be deemed an abuse of discretion."

Wong v. City & Cty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157,

162 (1983) (emphasis in original).  Consequently, the "law of

the case" doctrine does not preclude modification of a prior ruling.  Stender v. Vincent, 92 Hawai'i 355, 362, 992 P.2d 50, 57 (2000).  In addition to cogent reasons, exceptional circumstances, such as the correction of a patent error, may warrant a modification of a prior order of a judge of equal and concurrent jurisdiction.  Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 264-65, 799 P.2d 60, 66 (1990).

In its August 31, 2016 memorandum opinion regarding Appeal 3 re 2012 Denials of Motions to Vacate Judge Loo's 2004 Summary Judgment Orders, the ICA had already addressed and rejected Szymanski's arguments regarding Judge Loo's recusal.  Szymanski reasserted the same arguments in his June 30, 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders.  Thus, the law of the case doctrine applies.

Szymanski advanced no cogent reasons, patent error, or exceptional circumstances for the ICA to revisit its prior rulings.  Thus, the ICA did not err in applying the law of the case doctrine with respect to Szymanski's 2014 Renewed Motion to Vacate Judge Loo's 2004 Summary Judgment Orders that again asserted Judge Loo should have been disqualified.

In addition, as indicated by Judge Cahill at the July 25, 2014 hearing on Szymanski's 2014 Renewed Motion to Vacate Judge

30

Loo's 2004 Summary Judgment Orders, the renewed motion was actually a "motion to reconsider a motion to reconsider."

Thus, Szymanski's first four and seventh questions on appeal lack merit.

**B.    Szymanski's arguments related to his third-party complaint against Shinwa also lack merit**

In his fifth question on certiorari, Szymanski contends the ICA gravely erred by holding that his third-party complaint against Shinwa "could be dismissed without a summary judgment motion being filed to properly dismiss it."

Szymanski misstates the ICA's ruling.  The ICA held that the issue of whether the third-party complaint was properly dismissed was encompassed in its summary disposition order resolving Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa.  Appeals 4 & 6, SDO at 4.  In its ruling on Appeal 2, the ICA affirmed the 2010 Judgment, which included the dismissal of Szymanski's third-party complaint against Shinwa, and vacated and remanded only the portion of the judgment related to the disbursal of funds.  Id.  The ICA therefore determined that the dismissal of Szymanski's third-party complaint was subject to the law of the case doctrine in his assertion of the issue in Appeal 6 re the 2015 Final Judgment.  Appeals 4 & 6, SDO at 4-5.

31

Again, Szymanski advanced no cogent reasons, patent error, or exceptional circumstances for the ICA to revisit its affirmance of the dismissal of the third-party complaint in its ruling in Appeal 2.

Therefore, the ICA did not err by applying the law of the case doctrine to Szymanski's fifth issue on certiorari.[11]

## C. The ICA erred in affirming the circuit court's ruling on remand regarding the disbursal of escrow funds

Finally, in his sixth issue on certiorari, Szymanski asks this court to determine whether the ICA erred when it failed to order the escrow funds returned to Szymanski and held there was "no evidence in the record" that the deposit was not "made under the Contract." The law of the case doctrine does not apply to this issue. In its October 24, 2013 SDO ruling on Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa, the ICA had remanded the issue of the disbursal of escrow funds to the circuit court for it to address on the merits, and Appeal 6 re the 2015 Final Judgment is the first appeal regarding the circuit court's August 27, 2014 ruling on this issue. Therefore, we further address this question on certiorari.

---

[11]   We also note that Szymanski did not raise the dismissal of his third-party complaint as a point of error in Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa. Because Syzmanski did not raise the third-party complaint issue in Appeal 2, his argument was actually waived. See Alvarez Family Trust v. Ass'n of Apartment Owners of the Kaanapali Alii, 121 Hawai'i 474, 488, 221 P.3d 452, 466 (2009).

This court reviews the interpretation of a contract de novo.  Tri-S Corp. v. Western World Ins. Co., 110 Hawai'i 473, 489, 135 P.3d 82, 98 (2006).  We have stated that, "[a]bsent an ambiguity, [the] contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech." Koga Eng'g & Constr., Inc., 122 Hawai'i at 72, 222 P.3d at 991 (brackets in original, citation omitted).

Examining the terms of the Contract and its amendments, we note that Paragraph 22.1 of the Contract, "Seller's Remedies," provides in relevant part:

> 22.1 Seller's Remedies. Upon the occurrence of any Event of Default, Seller shall have the following rights and remedies:
>
> (a) If such Event of Default should occur prior to the date the Deed is filed in the Office of the Assistant Registrar, Seller's sole remedy shall be to cancel this Contract, whereupon all rights of Buyer and duties and obligations of Seller shall terminate, and Seller shall be entitled to retain all of the Downpayments as Seller's sole and absolute property as compensation for Seller's costs in negotiating and preparing this Contract and for the damage caused by the default, Buyer hereby agreeing that the Downpayments represent fair and reasonable compensation to Seller for default . . . .

(Emphases added.)  This provision was not expressly modified by any subsequent amendment to the Contract.  Thus, at the core of the disbursal of funds issue is the definition of "Downpayment" under the Contract and its amendments.

Section 1.3 of the Contract defines "Downpayments" as "[t]he Initial Downpayment and Additional Downpayments to be made by Buyer on the Purchase Price, as defined in paragraph 3.1

33

and 3.2."  Paragraph 3, "Purchase Price" of the Contract, as modified by the Fourth Amendment to the Contract, reads as follows:

>      3.     Purchase Price.  Buyer shall pay to Seller, in United States legal tender, the Purchase Price of FOUR MILLION FIVE HUNDRED FIFTY THOUSAND DOLLARS ($4,550,000.00) for the Property, as follows:
>
>      3.1   Initial Downpayment. Buyer shall deposit into Escrow an initial downpayment (the "Initial Downpayment") of FORTY THOUSAND DOLLARS ($40,000) upon execution of the Contract.  THIRTY NINE THOUSAND DOLLARS ($39,000) of the Initial Downpayment, plus interest earned on this portion of the Initial Downpayment while in escrow, shall be refundable, if closing does not occur by June 30, 2000.
>
>      3.2   Additional Downpayment.  Buyer shall deposit into Escrow an Additional Downpayment of FORTY THOUSAND DOLLARS ($40,000) on or before July 4, 1999.  Such Addition [sic] Downpayment of FORTY THOUSAND DOLLARS ($40,000), plus interest earned on this Additional Downpayment while in escrow, shall be refundable, if closing does not occur by April 28, 2000.
>
>      3.3.  Balance of Purchase Price.  Buyer shall pay to Seller the balance of the Purchase Price (Purchase Price less Initial Downpayment (or portion thereof) deposited into Escrow and interest earned thereon) on the Closing Date.
>
>      3.4   Interest on Downpayments.  All Downpayments shall be deposited with Escrow and shall be credited to the Purchase Price, unless refunded in accordance with Sections 3.1 and 3.2 above.  Any interest earned on the Downpayments while in Escrow shall be credited to the Buyer at closing; provided, however, if the Downpayments are paid to Seller because of an Event of Default or because of a cancellation of this Contract (except as otherwise provided), all such interest shall be paid to Seller.  Buyer shall be responsible for instructing Escrow on the manner in which the Downpayments are to earn interest.

The Fourth Amendment removed a provision in the Contract for a second "Additional Downpayment" of $4,820,000 and altered the terms of refund for the Downpayments, but retained all other terms and conditions.

The Fifth Amendment to the Contract modified the "Closing Date" paragraph to read:

> 4. <u>Closing Date</u>.  The term "Closing Date" means:
>
> (a)   The earlier of March 30, 2001, or issuance of Final Subdivision approval from the County of Maui for the Property;
>
> (b)   That date determined by Buyer, in writing, that is between ten (10) working days from the date the Seller receives a partial release of mortgage for the Property from its mortgagee, which Seller agrees to obtain from its mortgagee as soon as practical, and 4(a) above; or
>
> (c)   Such other date as mutually agreed upon in writing by Seller and Buyer.

The Fifth Amendment retained all other terms and conditions.

According to the plain language of the Contract, as amended, "Downpayments" consist of an "Initial Downpayment" and "Additional Downpayment," which are both set forth in clearly specified amounts in Paragraph 3, as are the terms of refund. The Amended Contract does not indicate that "Additional Downpayment" would include any other deposit.

Wailea/Shinwa contend Szymanski's $50,000 deposit into escrow was an "Additional Downpayment" pursuant to Wailea's April 6, 2001 letter demanding that Szymanski deposit $49,000 by April 11, 2001.  Paragraph 34 of the Contract, "Sole Agreement," however, requires that modifications to the Contract be in writing and signed by the parties.  Thus, Wailea lacked the unilateral authority to require an "Additional Downpayment" without Szymanski's written agreement.

35

It does not appear Szymanski deposited the $50,000 pursuant to Wailea's April 6, 2001 letter. He definitely did not do so by the April 11, 2001 deadline demanded in Wailea's letter. Rather, Szymanski's April 23, 2001 letter to TG Escrow stated: "I am providing additional escrow funds to show my good faith in closing this purchase transaction . . . . Attached please find my check in the amount of $50,000 (FIFTY THOUSAND DOLLARS) to be applied towards the purchase price of the [property] or its development costs, at my option." This letter did not contain the word "Downpayment."

Wailea/Shinwa's argument that the deposit must be a "Downpayment" to which Wailea is entitled because only $1,000 remained in escrow prior to Szymanski's $50,000 deposit is without merit. The Contract specifically provided for refund of the Downpayments and did not require any other payments in the event that the Downpayments were refunded prior to closing.

The Contract, as amended, however, only entitled Wailea to "Downpayments" as defined therein in the event of default. Szymanski's $50,000 does not appear to be an "Initial Downpayment" or an "Additional Downpayment" under a plain reading of the Contract, as amended.

Moreover, when the circuit court addressed the disbursal of the escrow funds, it ruled based on a mistaken belief it was

36

bound by Judge's Loo's 2004 Summary Judgment Orders that Szymanski had breached the Contract and the ICA's affirmance of those orders in Appeal 1 re Judge's Loo's 2004 Summary Judgment Orders. In its October 24, 2013 summary disposition order regarding Appeal 2 re the 2010 Judgment in favor of Wailea/Shinwa, however, the ICA had clearly stated it was not addressing the merits of Szymanski's challenge to the disbursal of the escrow funds to Wailea, and it therefore vacated and remanded that issue alone for the circuit court to address on the merits. Therefore, the ICA erred in affirming the circuit court's ruling. On remand, the circuit court must address the disbursal of funds issue based on the Contract, as amended.

Accordingly, the ICA erred in ruling that Wailea was entitled to retain the $50,000 deposit with accrued interest and that "the Circuit Court did not err in granting Wailea's motion for disbursal of the funds."

## V.   Conclusion

We therefore affirm in part, and vacate in part, the ICA's October 5, 2018 judgment on appeal.[12] With respect to Appeal No.

---

[12] The ICA's October 5, 2018 judgment on appeal appears to misstate the orders and judgments Szymanski appealed from in Appeals 4 and 6. With respect to Appeal 4 (CAAP-14-0001138), the ICA's October 5, 2018 judgment on appeal affirmed the August 27, 2014 Order Denying Defendant and Third Party Plaintiff Michael J. Szymanski's Motion to Vacate Judge Rhonda Loo's 2004 Rulings and All Subsequent Rulings Based Upon Them, Due to Her Failure To Recuse Herself and the November 24, 2014 Final Judgment as to All Claims and

(continued. . .)

CAAP-14-0001138, we affirm the ICA's judgment on appeal affirming the August 27, 2014 Order Denying Defendant and Third-Party Plaintiff Michael J. Szymanski's Motion to Vacate Judge Rhonda Loo's 2004 Rulings and All Subsequent Rulings Based Upon Them, Due to Her Failure To Recuse Herself, filed on June 30, 2014.  With respect to Appeal No. CAAP-16-000034, we vacate the ICA's judgment on appeal only as to the disbursal of escrow

---

(. . .continued)

Parties.  However, Szymanski's notice of appeal for Appeal 4 only stated that he was appealing the August 27, 2014 Order Denying Defendant and Third Party Plaintiff Michael J. Szymanski's Motion to Vacate Judge Rhonda Loo's 2004 Rulings and All Subsequent Rulings Based Upon Them, Due to Her Failure To Recuse Herself.  The notice of appeal did not mention the November 24, 2014 Final Judgment as to All Claims and Parties, which was actually the subject of Szymanski's fifth appeal.  See note 9, supra.

    With respect to Appeal 6 (CAAP-16-0000034), the ICA's October 5, 2018 judgment on appeal affirmed the December 23, 2015 Order Granting Defendant Wailea Resort Company, Ltd.'s and Third-Party Defendants ADOA-Shinwa Development Corporation's and Shinwa Golf Hawaii Co., Ltd.'s Motion for Entry of Final Judgment After Dismissal of Appeal for Lack of Jurisdiction.  However, Szymanski's notice of appeal for Appeal 6 only stated that he was appealing the December 23, 2015 Final Judgment as to All Claims and Parties and "[a]ll previous orders entered by this court prior to the entry of that Final Judgment as to All Claims and Parties, but after the 2005 HRCP Rule 54(b)-certified Judgment," including: (a) the August 27, 2014 Order Denying Defendant and Third Party Plaintiff Michael J. Szymanski's Motion to Vacate Judge Rhonda Loo's 2004 Rulings and All Subsequent Rulings Based Upon Them, Due to Her Failure To Recuse Herself; (b) the August 27, 2014 Order Granting Defendant Wailea Resort Company, Ltd.'s and Third-Party Defendants ADOA-Shinwa Development Corporation's and Shinwa Golf Hawaii Co., Ltd.'s Motion: (1) "To Expunge Lis Pendens," (2) "For Entry of Final Judgment Based on Summary Judgment and/or Voluntary Dismissal Without Prejudice of the Remaining Claims," and (3) "[F]or Order Direct[ing] Clerk of Court to Disburse Funds;" and (c) the December 23, 2015 Order Granting Defendant Wailea Resort Company, Ltd.'s and Third-Party Defendants ADOA-Shinwa Development Corporation's and Shinwa Golf Hawaii Co., Ltd.'s Motion for Entry of Final Judgment After Dismissal of Appeal for Lack of Jurisdiction.

funds to Wailea.  This case is remanded to the circuit court for further proceedings consistent with this opinion.

Keith M. Kiuchi                    /s/ Paula A. Nakayama
for petitioner
                                   /s/ Sabrina S. McKenna
Bruce H. Wakuzawa
for respondent                     /s/ Richard W. Pollack

                                   /s/ Michael D. Wilson

                                   /s/ Catherine H. Remigio