**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000149
14-FEB-2024
08:05 AM
Dkt. 180 SO**

NO. CAAP-18-0000149
(Consolidated with CAAP-18-0000335


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


**CAAP-18-0000149**
WARREN ADELMAN, EMILY ADELMAN,
Plaintiffs-Appellants,
v.
CRAIG STEELY, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS
1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND
DOE GOVERNMENTAL ENTITIES 1-10, Defendants


AND


**CAAP-18-0000335**
WARREN ADELMAN, EMILY ADELMAN,
Plaintiffs-Appellants/Cross-Appellees,
v.
CRAIG STEELY, Defendant-Appellee/Cross-Appellant,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS
1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 1-10; AND
DOE GOVERNMENTAL ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 16-1-0482-03 (KTN))


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Wadsworth and McCullen, JJ.)

This is a consolidated appeal from proceedings

involving a jury-waived trial.  In CAAP-18-0000149,

Plaintiffs-Appellants/Cross-Appellees Warren Adelman and Emily Adelman (the **Adelmans**) appeal from the February 12, 2018 Findings of Fact (**FOFs**), Conclusions of Law (**COLs**) and Order (**FOFs/COLs/ Order**) entered by the Circuit Court for the First Circuit (**Circuit Court**).[1]  In CAAP-18-0000335, the Adelmans appeal from the April 10, 2018 Final Judgment (**Final Judgment**), the March 19, 2018 Order on Plaintiffs' Motion for Attorneys' Fees and Costs and Defendant's Motion for Costs (Both Filed on February 26, 2018) (**Order on Fees and Costs**), and the FOFs/COLs/Order, all entered by the Circuit Court.  Defendant-Appellee/Cross-Appellant Craig Steely (**Steely**) cross-appeals from the Final Judgment, the Order on Fees and Costs, and the FOFs/COLs/Order.

The Adelmans raise six (6) points of error on appeal, contending that the Circuit Court erred in:  (1) failing to conclude that Steely breached his architectural standard of care (**SOC**) owed with respect to his design specifications for the Adelman's New Home (**New Home**); (2) concluding that Steely's failure to personally inspect the New Home's roof before construction was completed did not cause the Adelmans' actual damages; (3) concluding that the Adelmans were obligated to accept a replacement roof, and that their failure to accept that replacement constituted a failure to mitigate damages; (4) failing to conclude that Steely breached their Abbreviated Form of Agreement Between Owner and Architect (**Agreement**) by failing to observe, inspect, and guard the Adelmans against defects in the New Home's concrete floors; (5) failing to conclude that

_____

[1]     The Honorable Keith K. Hiraoka presided.

Steely's conduct constituted unfair or deceptive trade acts or practices; and (6) denying the Adelmans' request for reimbursement of their full attorneys' fees.

Steely raises three (3) points of error, arguing that the Circuit Court erred in: (1) concluding that Steely breached the Agreement by not personally inspecting the New Home's roof before construction was completed; (2) awarding the Adelmans their prevailing party attorneys' fees and costs; and (3) concluding that Steely's Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 68 Offer of Settlement (**Settlement Offer**) was invalid.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the parties' points of error as follows:

(1) The Adelmans argue that Steely breached his SOC and violated the Agreement by failing to specify the New Home's roofing system, and assigning said duty to the general contractor and/or subcontractor(s).[2] The Adelmans assert that Steely's duty for the roofing arose from §§ 1.1.2, 2.3.1, and 9.5 of the Agreement, was non-delegable under the Agreement and common law, and that the Circuit Court erred in its FOF 88 and mixed FOF/COL 1.c.

Upon review, the Circuit Court did not clearly err in its FOF 88 or mixed FOF/COL 1.c., nor in concluding that Steely

---

[2] The Adelmans claim that Steely breached the anti-assignment provision in § 9.5 of the Agreement. As the Circuit Court found, Steely did not assign his obligations under the Agreement to Romanchak. The aesthetic architectural design approved by Mrs. Adelman was conceived and documented by Steely, not Romanchak. The soils, civil and structural engineering aspects of the project were not within Steely's scope of work.

did not breach his SOC or the Agreement in not specifying the New Home's roofing system.

In FOF 88, the Circuit Court found, after considering expert testimony, that "[a]lthough the architect <u>ordinarily</u> specifies the roofing system, <u>it is within the standard of an architect's professional skill and care to recommend acceptable alternatives and have the general contractor and owner select the actual system to use</u>." (Emphasis added). In mixed FOF/COL 1, the court concluded that "Steely's aesthetic design concept for the [New Home] complied with his obligations under the Agreement under the facts of this case[.]" In reaching its decision, the court gave more credibility to Steely's expert, James Reinhardt, who testified that "in this case" Steely appropriately deferred the decision of the proper roofing system to Chris Smith (**Smith Builders**), in part because Smith was a local Maui contractor. Reinhardt's testimony corresponded with his expert report in which Reinhardt opined, *inter alia*, that Steely had recommended one of three various roofing systems[3] - any of which Reinhardt reported "could have performed satisfactorily" on the New Home - but the decision to use a different system was made by "the Owner, the Contractor, the roofer and the material supplier[,]" without Steely. This court does not review the decisions of a trial court regarding credibility of witnesses, that is the province of the trial court. See <u>Porter v. Hu</u>, 116 Hawaiʻi 42,

---

[3] Additional evidence showed that the EPDM system that was among those Steely suggested had been used successfully on Steely's prior home designs on the Island of Hawaiʻi, but there was no roofing contractor on Maui to install such a system within the Adelmans' budget.

60, 169 P.3d 994, 1012 (App. 2007). Thus, we conclude the Circuit Court did not clearly err in finding Steely did not breach his SOC or the Agreement.

(2) The Adelmans contend that Steely's failure to personally inspect the New Home's roofing before construction was completed breached the Agreement and caused the Adelmans' actual damages.[4]

To state a claim for breach of contract, a plaintiff must show "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." First Com. Mortg. Co. v. Reece, 108 Cal. Rptr. 2d 23, 33 (Cal. Ct. App. 2001). "Causation of damages in contract cases requires that the damages be proximately caused by the defendant's breach[,]" meaning the plaintiff must show that the breach "was a substantial factor in causing damage to the [plaintiff]."[5] Troyk v. Farmers Grp., Inc., 90 Cal. Rptr. 3d 589, 628-29 (Cal. Ct. App. 2009) (citations omitted) (emphasis altered).

The Circuit Court found that Steely breached the Agreement by failing to personally inspect the roof before construction was completed, but that the damages incurred by the Adelmans to replace the roofing system were not caused by Steely's breach. The court did not clearly err.

---

[4] The Adelmans reference the Agreement's §§ 2.3.1, 2.4.5, 2.4.8, 2.4.9, and 2.4.10.

[5] The Agreement contains a choice of laws provision pursuant to which California law applies.

Expert witness testimony elicited that the applicable SOC in overseeing construction includes observing critical elements, like roofing, to ensure building is in compliance with the construction documents. This includes going up on to the roof to inspect the construction. Here, the roofing system selected and installed consisted of two elements, a top layer of GacoRoof, and a "silicon fluid applied coating," over the bottom layer. The top layer of GacoRoof was not installed at the manufacturer's recommended thickness, and the bottom layer was of a material that was appropriate as an underlayment, but inappropriate as a base layer, which is how it was installed. Had Steely actually looked at the roof before construction was completed, he would have seen the defects, and rightfully rejected the Smith Builders' work under § 2.4.10 of the Agreement. However, even if Steely had climbed on to the roof to inspect it after installation of the roofing system was completed, the faulty installation was by then already done.

The evidence supported finding that the "means, methods, techniques, . . ." of the contractor and/or subcontractor led to the failure. Thus, Steely's failure to inspect the roofing was not "a substantial factor in causing" the Adelmans claim for damages from the roofing. Breach of the SOC and causation are ordinarily left to the trier of fact to decide, and we cannot conclude the Circuit Court's findings were clearly erroneous. See Ramirez v. Plough, Inc., 863 P.2d 167, 171 (Cal. 1993).

(3)   The Adelmans contend that the Circuit Court erred in concluding that they were obligated to accept a new roof replacement, installed by Smith Builders under its own warranty, and that their failure to accept such replacement constituted a failure to mitigate damages.  However, the court did not find whether the rejection was reasonable or unreasonable, nor did the court find/conclude that the Adelmans failed to mitigate their damages.  The court found that Steely's breach was not a legal cause of the Adelmans' damages.  Thus, the Adelmans' third point of error is without merit.

(4)   The Adelmans contend, with regard to the "design and construction" of the concrete floor, that the Circuit Court clearly erred in finding that none of Steely's other acts or omissions were legal causes of any damages to the Adelmans.[6]  The Adelmans assert that if Steely had been on site, performing his obligations under the Agreement, the Smith Builders' alleged defective work would never have happened, or at least would have been remedied.

Evidence adduced at trial supports that Steely discussed flooring options with Mrs. Adelman, Mrs. Adelman had input on and reviewed other flooring options before the finished concrete was finally chosen, and that Steely properly deferred the structural design of the floor to the Adelmans' structural engineer Walter Vorfeld, who followed the recommendations of the geotechnical engineer when preparing his structural designs.

---

[6]   The Adelmans cite to FOF/COL 1.g., and FOF 128.

As to the floor's finish, evidence showed that Steely specified the products and steps, but that the Smith Builders deviated from Steely's specifications. Expert witness testimony found that the efflorescence was caused by moisture in the slab, and while the expert witnesses disagree over the source of the moisture in the slab, none were Steely's responsibility under the Agreement. The Agreement provided that Steely would "not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of" the Smith Builders' work, nor would Steely "have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures . . . since these are solely" the Smith Builders' responsibility under their separate contract with the Adelmans. The Circuit Court did not clearly err in concluding that none of Steely's acts or omissions were legal causes of the damages to the concrete floor.

(5) The Adelmans contend that Steely committed unfair and deceptive trade practices when he: (a) held himself out as authorized to practice in Hawaiʻi when he was not licensed; (b) created a "plan stamping scheme to evade licensing laws"; (c) certified fraudulent invoices to an unlicensed contractor; and (d) falsely represented he had professional liability insurance.

Upon review, we conclude the court did not err in finding Steely was not liable to the Adelmans for unfair or deceptive trade acts or practices.

"A deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers

acting reasonably under the circumstances where (3) the representation, omission, or practice is material.'" Hungate v. Law Office of David B. Rosen, 139 Hawaiʻi 394, 411, 391 P.3d 1, 18 (2017) (citation and brackets omitted); see also Hawaii Revised Statutes (**HRS**) § 480-2 (2008)[7] and HRS § 480-13(b) (2008).[8]  To obtain relief for unfair or deceptive trade acts or practices, a consumer must establish:  (1) a violation of HRS § 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages.  Davis v. Wholesale Motors, Inc., 86 Hawaiʻi 405, 417, 949 P.2d 1026, 1038 (App. 1997) (emphasis added) (citations omitted).  The Hawaiʻi Supreme Court has provided that in determining whether the defendant's conduct was the legal cause of the plaintiff's injuries, the conduct must be a substantial factor in bringing about the harm.  See O'Grady v. State, 140 Hawaiʻi 36, 44, 398 P.3d 625, 633 (2017).

---

[7]     HRS § 480-2 provides, in pertinent parts:

> **§ 480-2.  Unfair competition, practices, declared unlawful.**  (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
> . . . .
> (d)  No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
> (e)  Any person may bring an action based on unfair methods of competition declared unlawful by this section.

[8]     HRS § 480-13(b) provides, in pertinent part:

> **§ 480-13.  Suits by persons injured; amount of recovery, injunctions.**
> . . . .
> (b)  Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2:
> (1)   May sue for damages sustained by the consumer[.]

Regarding the Adelmans' contentions (a) and (d), the Circuit Court did not find that Steely's representations or omissions regarding where he was licensed or if he carried professional liability insurance were unfair or deceptive. The court concluded that neither act/omission was a legal cause of the Adelmans' damages. The court correctly determined that the contractor's and/or subcontractor's means, methods, techniques, sequences or procedures for construction were the cause of the Adelmans' damages from defects in the roofing and the floor. The Adelmans argue that "[i]f Steely had disclosed he was not a Hawaii-licensed architect the Adelmans never would have hired him," and "never would have endured this nightmare of problems." We conclude that the Circuit Court did not clearly err in finding that Steely's conduct was not a substantial factor in the Adelmans' damages.

Regarding contention (b), Romanchak reviewed the architectural plans, commented on and directed changes to the plans, concluded they were appropriate given the nature and location of the project, and stamped the sheets in approval. This does not violate Hawaiʻi Administrative Rules (**HAR**) § 16-115-10(4),[9] and, as the Circuit Court found in an unchallenged finding, it is not unusual for Hawaiʻi licensed architects and mainland architects to work together in this manner.

---

[9]     HAR § 16-115-10(4) states:

**§ 16-115-10.**   <u>Misconduct in the practice</u>.

(4) "Plan stamping"; i.e. sealing, stamping, or certifying any document which was not prepared by or supervised by the licensee[.]

Finally, regarding contention (c), § 2.4.9 of the Agreement provides that Steely's payment certifications were representations that the work had progressed to the point as indicated on the contractor's payment applications. Steely was not responsible for determining whether the contractors were properly licensed, or who actually performed the work under the contract, as § 4.4 of the Agreement provided that the Adelmans were responsible for auditing the payments to verify the contractor's applications.

Thus, the Circuit Court did not err in concluding Steely was not liable for unfair or deceptive trade acts or practices.

(6) The Adelmans argue that the Circuit Court erred in denying the Adelmans' request for reimbursement from Steely for their full attorneys' fees. This point of error is not based on the Circuit Court erring in awarding $0.25 as a statutory maximum 25% of $1.00, but is premised on the Adelmans' other points of error and that, with those other alleged errors corrected, the Adelmans' recovery would be much greater. In light of our disposition of the Adelman's other points of error, we conclude that this argument is without merit.

(1) Steely contends that the Circuit Court erred in concluding that he breached the Agreement by failing to personally inspect the roof before construction was completed. As discussed, expert testimony established that Steely's duties under his SOC in overseeing construction included inspecting the roof to observe whether it was proceeding in line with the

11

construction documents.  The court did not clearly err in determining Steely breached the agreement by not physically inspecting the roof prior to completion.

(2)  Steely argues that the Circuit Court erred in determining that the Adelmans were the prevailing party for the purposes of moving for an award of attorneys' fees and costs under HRS § 607-14 (2016).

HRS § 607-14 provides that, in an action in assumpsit, reasonable attorneys' fees shall be taxed in favor of the prevailing party and against the losing party.  "A party need not 'sustain his entire claim' in order to be a 'prevailing party' for purposes of entitlement to costs and attorneys' fees." Fought & Co. v. Steel Eng'g. and Erection, Inc., 87 Hawaiʻi 37, 52, 951 P.2d 487, 502 (1998) (citation omitted).  Rather "[t]he 'prevailing party' is the one who 'prevails on the disputed main issue[,]' [and] [e]ven if the party does not prevail 'to the extent of his original contention, he will be deemed to be the successful party for the purpose of taxing costs and attorney's fees.'"  Nelson v. Hawaiian Homes Comm'n, 130 Hawaiʻi 162, 165, 307 P.3d 142, 145 (2013) (emphasis added) (citation omitted). The "disputed main issue," is identified by looking to "the principal issues raised by the pleadings and proof in a particular case[.]"  Fought & Co., 87 Hawaiʻi at 52-53, 951 P.2d at 502-03 (quoting MFD Partners v. Murphy, 9 Haw. App. 509, 514, 850 P.2d 713, 716 (1992)).

The Adelmans' complaint sought damages primarily under the theory of breach of contract, and the Circuit Court found that Steely had breached the Agreement, and awarded the Adelmans nominal damages. Thus, the Adelmans prevailed on their main disputed issue of whether Steely breached the Agreement, even if they did not prevail to the extent of all of their claims nor in the amount of damages sought. See MFD Partners v. Murphy, 9 Haw. App. at 514, 850 P.2d at 716 (holding that the plaintiffs, who only obtained nominal damages, were the prevailing party for purposes of an award of attorneys' fees and costs because they prevailed on the two principal issues in the case). Accordingly, the Circuit Court did not err in determining that the Adelmans were the prevailing party, and the court did not abuse its discretion in awarding attorneys' fees and costs.

(3) Finally, Steely contends that the Circuit Court erred in concluding that his Settlement Offer was invalid because it did not include the proposed "general settlement and release agreement" in, or with, the offer.

For a Rule 68 offer to be valid and enforceable, "it is essential that [the offeree] be able to discern with certainty what the precise terms of the offer are," and that, "[b]ecause of the special considerations in a Rule 68 offer, courts may be particularly prone to interpret the language of a Rule 68 offer against the defendant that drafted it." Collins v. S. Seas Jeep Eagle, 87 Hawaiʻi 86, 90, 952 P.2d 374, 378 (1997) (citation and internal quotations omitted). "[A]n offer that does not satisfy the requirements of Rule 68 does not entitle the offeror to the

special benefits of Rule 68."  <u>Crown Properties, Inc. v. Fin.
Sec. Life Ins. Co., Ltd.</u>, 6 Haw. App. 105, 113, 712 P.2d 504, 510
(1985).

Here, Steely's Settlement Offer included a monetary
amount to settle all claims, but also included the requirement
that the Adelmans "sign a general release and settlement
agreement relating to any and all claims alleged or which could
have been alleged against Steely in this action" and that the
offer "may only be accepted in its entirety."  However, the offer
did not include a draft of such release and settlement agreement
for the Adelmans to review to understand to what they would be
agreeing.  The Circuit Court provided that "[i]f the Rule 68
offer requires that the offeree sign a separate settlement
agreement, the proposed document should either be attached to the
offer or the text embedded within the offer so that the offeree
can know exactly what she or he is being asked to sign."  Because
the Settlement Offer would require the Adelmans to agree to a
separate settlement agreement that they had not seen, the Circuit
Court did not abuse its discretion in finding the offer invalid
under Rule 68.

Accordingly, the Circuit Court's April 10, 2018 Final Judgment, February 12, 2018 FOFs/COLs/Order, and March 19, 2018 Order on Fees and Costs are affirmed.

DATED: Honolulu, Hawaiʻi, February 14, 2024.

On the briefs:

Bruce A. Voss,
Jai Keep-Barnes,
(Bay Lung Rose & Holma),
for Plaintiffs-Appellants/
 Cross-Appellees.

Bennett J. Chin,
Jesse J.T. Smith,
(McCorriston Miller Mukai
 (MacKinnon LLP),
for Defendant-Appellee/
 Cross-Appellant.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Clyde J. Wadswroth
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge